**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **NOV 1 3 2018** ★

**BROOKLYN** OFFICE

**UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | **18-MD-2819 (NG) (LB)** |
| THIS DOCUMENT APPLIES TO:<br><br>ALL END-PAYOR PLAINTIFF CASES | **OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS CERTAIN OF THE END-PAYOR PLAINTIFFS' STATE LAW CLAIMS** |

**GERSHON, United States District Judge:**

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFFS' ALLEGATIONS ......................................................................... 2

III.   LEGAL STANDARD.......................................................................................... 3

IV.    ANALYSIS........................................................................................................... 4

   A.   Plaintiffs' State Law Antitrust Claims............................................................. 4

     1.   Arkansas, Florida, Hawaii, Minnesota, and Missouri.................................... 4

       Arkansas....................................................................................................... 5

       Florida.......................................................................................................... 8

       Hawaii.......................................................................................................... 9

       Minnesota................................................................................................... 12

       Missouri ..................................................................................................... 13

     2.   In-State Impact under Tennessee and Wisconsin Law ................................ 14

   B.   Plaintiffs' State Law Consumer Protection Claims ........................................ 15

       Arkansas..................................................................................................... 15

       California .................................................................................................... 16

       Colorado..................................................................................................... 17

       Pennsylvania .............................................................................................. 19

       Vermont ..................................................................................................... 20

V.     CONCLUSION.................................................................................................. 22

## I.    INTRODUCTION

This multi-district litigation arises out of defendant Allergan's alleged actions to improperly delay the market entry of generic competitors to its dry-eye medication Restasis® (cyclosporine ophthalmic emulsion). There are two groups of plaintiffs: those that purchased Restasis® directly from Allergan and End-Payor Plaintiffs ("EPPs"), health and welfare funds that purchased (or reimbursed members' purchases of) Restasis® from distributors or retailers. Both groups contend that the price they paid for Restasis® would have been lower if Allergan had faced competition from generic manufacturers and that they were also deprived of the opportunity to purchase lower-priced, generic versions of the drug.

The EPPs are precluded from asserting federal damages claims under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which interpreted federal antitrust law to preclude indirect purchasers from recovering damages in order to avoid "a serious risk of multiple liability for defendants" and "whole new dimensions of complexity to treble-damages suits [which would] seriously undermine their effectiveness." *Id.* at 730, 737. However, the Supreme Court has recognized that, although federal antitrust law does not permit indirect purchasers to recover damages, neither does it preempt state antitrust statutes that do so. *California v. ARC Am. Corp.*, 490 U.S. 93, 105–06 (1989). In their Consolidated Complaint, EPPs seek injunctive relief under the Clayton Act, 15 U.S.C. § 26, and declaratory relief under 28 U.S.C. § 2201 for alleged violations of sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1–3. And plaintiffs bring their claims for monetary damages only under the antitrust and consumer protection laws of various states, Puerto Rico, and the District of Columbia.

Allergan now moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss certain claims brought under the laws of some of the jurisdictions. For the reasons set forth below, Allergan's motion is granted in part and denied in part.

## II.    PLAINTIFFS' ALLEGATIONS

For a full recitation of plaintiffs' factual allegations, I refer to my Opinion and Order dated September 18, 2018 denying defendant's motion to dismiss for failure to allege causation. (Docket No. 146.) Briefly, EPPs allege that Allergan took a number of improper actions to delay the Food and Drug Administration ("FDA") in approving generic competitors for Restasis®, including: (1) filing sham citizen petitions with the FDA; (2) defrauding the U.S. Patent and Trademark Office ("USPTO") into issuing second-wave patents for Restasis®; (3) using those patents to file baseless patent infringement lawsuits, further delaying the FDA's approval process for generic Restasis® equivalents; and (4) when it appeared that its patents were likely to be invalidated, transferring those patents to the Saint Regis Mohawk Tribe, which licensed them back, in an effort to frustrate invalidation of the patents by renting the Tribe's sovereign immunity. As a result, EPPs allege that Allergan has maintained a monopoly for several years beyond what it would have had absent its wrongful conduct and has used that monopoly to charge an inflated price for Restasis®. The EPPs assert that they have been injured because they overpaid for cyclosporine.

EPPs bring five claims, only two of which are at issue on this motion.[1] The Second Claim challenges Allergan's monopolistic conduct and seeks damages under the laws of 22 jurisdictions

---

[1] Defendant is not moving to dismiss the following claims: The First Claim, which seeks an injunction under section 16 of the Clayton Act for violations of sections 1, 2, and 3 of the Sherman Act; the Fourth Claim, which seeks disgorgement of the excess profits Allergan earned under California's unjust enrichment law; and the Fifth Claim, which seeks a declaratory judgment that Allergan's conduct violated the Sherman Act.

on an antitrust theory. The Third Claim challenges Allergan's unfair, unconscionable, deceptive, and fraudulent conduct under the consumer protection laws of five states. For each claim, EPPs rely on the same factual allegations.

Allergan moves to dismiss the antitrust claims as to eight of the 22 jurisdictions,[2] and moves to dismiss the consumer protection claims as to each of the five jurisdictions. In their opposition, EPPs voluntarily withdraw their claims brought under the laws of Puerto Rico, but they oppose dismissal of their other claims.

## III.   LEGAL STANDARD

Defendants move to dismiss the EPPs' Consolidated Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering such a motion, the court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360–61 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to provide the defendant with "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alterations omitted)). Dismissal of a complaint for failure to provide sufficient notice, however, is "usually reserved for those cases in which the

---

[2] Allergan does not challenge EPPs' claims for violation of the antitrust laws of Arizona, California, the District of Columbia, Illinois, Iowa, Kansas, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, and Vermont.

complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

## IV.   ANALYSIS

### A.   Plaintiffs' State Law Antitrust Claims

#### 1.   Arkansas, Florida, Hawaii, Minnesota, and Missouri

EPPs' Second Claim, captioned "Violation of State Antitrust Law," alleges that "Allergan intentionally and wrongfully maintained monopoly power in the relevant market through its overarching anticompetitive scheme in violation of the following state laws" and lists statutory provisions from 22 jurisdictions. Defendant contends that the claims brought under the laws of five of those jurisdictions—Arkansas, Florida, Hawaii, Minnesota, and Missouri—rely on consumer protection statutes that cover a range of theories of liability and therefore leave ambiguous how these statutes apply to an antitrust theory of harm. Allergan argues that the claims are confusing and that it lacks "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Allergan is correct that the statutes cited by EPPs are broad and provide for a variety of claims under different theories of liability. EPPs make it clear, however, that they have one factual theory of liability—that Allergan engaged in improper efforts to extend its monopoly in order to delay market entry of generic substitutes for Restasis®. EPPs are asserting that Allergan's conduct violated several states' antitrust laws, as well as several states' consumer protection laws. Whether or not the conduct does so is addressed below on a state-by-state basis. Allergan's more general argument that plaintiffs have not provided it with sufficient notice of the claims they are asserting, however, is meritless. Allergan has not received notice of any theory other than a monopolization theory precisely *because* EPPs are not asserting any other theories of liability. Moreover, even if

4

the Consolidated Complaint were unclear on that front, EPPs' Memorandum of Law in Opposition to defendant's motion has confirmed that they are not raising a separate theory of liability on their consumer protection claims, but are merely alleging that the same conduct violated two separate sets of laws. (Mem. in Opp. at 4 ("EPPs intended to assert exactly what they did assert: a claim under the relevant consumer protection statutes based on Allergan's anticompetitive conduct.").) Rule 8's notice requirement has been met.

In its Reply Brief, Allergan insists that EPPs must amend their Consolidated Complaint to pursue a certain theory or to rely only on specific subsections of a listed statute. It cites authority for the proposition that a party may not amend its pleadings through a brief. Plaintiffs, however, have not amended their complaint. Rather, they have confirmed that they are not pursuing certain theories that they did not plead. I thus disagree that an Amended Consolidated Complaint is needed, but I do consider the representations made by EPPs to be binding. I will not allow EPPs to revive a theory that they have foregone in their opposition papers and did not articulate in their Consolidated Complaint merely because such a theory is cognizable under a statute listed in the complaint.

### *Arkansas*

The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.* ("ADTPA"), contains a "catch-all" provision, which prohibits "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." *Id.* § 4-88-107(a)(10). EPPs represent that, for this claim, their "scheme to monopolize" theory of harm is the "unconscionable" practice for which they seek to hold Allergan liable. For the reasons stated above, I reject defendant's argument that plaintiffs' claim under the ADTPA should be dismissed for failure to provide notice of the specific claim being alleged.

Federal courts are divided on whether the term "unconscionable" in the Arkansas statute includes monopolization claims—a question Arkansas courts have not addressed. Many courts, relying on the Arkansas Supreme Court's liberal construction of the statute, have concluded that the ADTPA does apply to claims of anticompetitive conduct. *See, e.g.*, *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, 2015 WL 4755335, at *23 (N.D. Cal. Aug. 11, 2015) (citing *State ex rel. Bryant v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999)); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *22–23 (N.D. Cal. Oct. 2, 2014); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 404–05 (E.D. Pa. 2010); *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 178 (D. Me. 2004).

Other courts, for varying reasons, have disagreed. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 818–19 (N.D. Ill. 2017); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *35 (N.D. Ill. June 29, 2015); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1166–67 (N.D. Cal. 2015); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042–43 (N.D. Cal. 2011); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5094289, at *8 (N.D. Cal. Dec. 8, 2010).

I agree with the courts that have found that claims like those brought by EPPs here fall within the statute's scope. In fact, *Sheet Metal Workers* held that allegations similar to those made by EPPs in their complaint—"that [the defendant] engaged in a scheme designed to maintain its monopoly over the Wellbutrin SR market and prevent generic manufacturers from entering the market"—falls under the ADTPA's catch-all provision. *See* 737 F. Supp. 2d at 405.

6

On August 1, 2017, an amended version of the ADTPA went into effect. Under this version, a plaintiff "must prove individually that he or she suffered an actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under this chapter." Ark. Code Ann. § 4-88-113(f)(2). Allergan argues that plaintiffs' ADTPA claim must be dismissed for failing to allege that they purchased Restasis® based on their reliance on Allergan's deception. I agree that, to the extent EPPs' claim is based on purchases that occurred after August 1, 2017, it must be dismissed for failure to plead reliance.

Reliance, however, was not an element of the former version of the ADTPA. The statute previously provided that "[a]ny person who suffers actual damage or injury as a result of an offense or violation . . . has a cause of action to recover actual damages." Ark. Code Ann. § 4-88-113(f) (effective July 30, 1999). To establish a violation of the prior statute, a plaintiff must show that defendant's conduct proximately caused her injury. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 666 (8th Cir. 2009); *accord Ramthun v. Bryan Career College-Inc.*, 93 F. Supp. 3d 1011, 1023 (W.D. Ark. 2015). But she need not show reliance. *See Pleasant v. McDaniel*, 550 S.W.3d 8, 12 (Ark. Ct. App. 2018) (reliance is "conspicuously missing from the elements of the ADTPA"); *see also Erdman Co. v. Phoenix Land & Acquisition, LLC*, 2013 WL 3776373, at *5 (W.D. Ark. July 17, 2013) ("[W]hile reliance is not an element, causation is.").

I find that the amended version of the ADTPA is not retroactive, and thus the portion of EPPs' claim that relies on purchases made prior to August 1, 2017 is viable. *See Mounce v. CHSPSC, LLC*, 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (concluding that the amended version is not retroactive, because the statutory change is substantive, not procedural). Although the Eighth Circuit recently held that even the former version of the ADTPA "required proof of reliance, even though that term was not expressly included in the statute," that was in the context

7

of satisfying the proximate cause requirement in a deceptive advertising case. *Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 662–63 (8th Cir. 2018). It was in that context that the Eighth Circuit explained that causation is an element of an ADTPA claim and that "[c]ausation, in turn, is not possible without reliance." *Id.* at 662. The "reliance" requirement, however, need not and should not be read into the statute when a plaintiff brings a monopolization claim. In this case, causation under the ADTPA is established because EPPs plausibly allege that Allergan's monopolization scheme delayed the entry of generic competition and that such competition would have lowered the price of cyclosporine.

Allergan's motion to dismiss EPPs' ADTPA claim is granted to the extent that the claim includes purchases that occurred after August 1, 2017. The motion is otherwise denied.

### *Florida*

The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*, proscribes antitrust violations as well as other unfair methods of competition. *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 175 (D. Mass. 2013) ("[C]ourts have held that the violation of traditional antitrust elements constitutes a violation of the relevant [Florida] consumer protection statute."); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 900 (E.D. Pa. 2012); *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1996). And, unlike Florida's antitrust law, which follows *Illinois Brick* and does not allow indirect purchasers to recover damages for antitrust violations, the Unfair Trade Practices Act provides for such recovery. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 699 n.23 (E.D. Pa. 2014); *In re Florida Microsoft Antitrust Litig.*, 2002 WL 31423620, at *2 (Fla. Cir. Ct. Aug. 26, 2002).

Defendant's sole argument is that plaintiffs have failed to specify in their complaint that they are pursuing an antitrust theory under the unfair methods of competition provision. Defendant notes that the Florida statute also prohibits three other unfair trade practices. As discussed above, this argument is without merit.

Allergan's motion to dismiss the Florida claim is denied.

### *Hawaii*

EPPs bring a claim under Haw. Rev. Stat. § 480-2(a), which prohibits both "[u]nfair methods of competition" and "unfair or deceptive acts." Allergan seeks to dismiss this claim, arguing that it cannot determine whether EPPs allege that it engaged in both forms of prohibited conduct. EPPs clarify in their opposition that their claim relates only to "unfair methods of competition," not "unfair and deceptive acts." I find that the anticompetitive scheme described in the complaint is sufficient to state a claim for unfair methods of competition under the Hawaii statute. *See, e.g., In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *23 (E.D. Tenn. June 24, 2015); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253 (D. Conn. 2015); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1109 (N.D. Cal. 2007).

Allergan also seeks dismissal of this claim based on EPPs' failure to notify the Hawaii Attorney General about their Consolidated Complaint prior to serving the complaint on Allergan. Under Haw. Rev. Stat. § 480-13.3(a)(1), consumers bringing a class action alleging unfair methods of competition under Hawaii's consumer protection law must first file their complaint *in camera* and under seal, and then serve it on the Attorney General of Hawaii.[3] This requirement sets in

---

[3] EPPs note that they sent a letter to the Hawaii Attorney General on the same day that the Consolidated Complaint was filed, which was approximately four months after Allergan was served with their first complaint. This action does not comply with the statute.

motion a process through which the State can decide whether it will prosecute the action on its own. § 480-13.3(a)(2)–(5).

I must first determine if failure to comply with Hawaii's notice requirement would mandate dismissal in Hawaii state court. In my view, it would. The notice requirement does not apply to claims for unfair or deceptive acts or practices, and the statute establishes that the requirement does not limit the rights of consumers who bring class actions raising such claims. § 480-13.3(a)–(b). It logically follows that, in Hawaii courts, non-compliance with the requirement does limit the rights of consumers who bring class actions that raise other claims, such as the claim brought by EPPs here. *Contra In re Aftermarket Filters*, 2009 WL 3754041, at *6; *In re Propranolol*, 249 F. Supp. 3d 712, 728 n.24 (S.D.N.Y. 2017).

In any event, the issue presented here is whether Hawaii's provision, as I interpret it, bars a federal action. I therefore must decide whether Hawaii's law conflicts with Federal Rule of Civil Procedure 23. If I find that there is no conflict, then Hawaii's law controls and the claim must be dismissed. If I conclude otherwise, then I must decide if Hawaii's law is procedural, in which case federal procedure dictates and the claim survives, unless Hawaii's procedure is "part of a State's framework of substantive rights or remedies." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010) (Stevens, J., concurring).[4]

---

[4] Justice Scalia's plurality opinion in *Shady Grove*—which adopted a bright-line rule that the Federal Rules of Civil Procedure always apply—garnered only four votes. Justice Stevens's narrower concurrence therefore governs, under the rule announced in *Marks v. United States*: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977) (internal quotation marks omitted). *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415 (S.D.N.Y. 2011) (finding that Justice Stevens' concurrence is the controlling opinion by which interpreting courts are bound); *In re Wellbutrin Antitrust Litig.*, 756 F. Supp. 2d 670, 675 (E.D. Pa. 2010) (same).

10

Rule 23 establishes that a class action may be maintained if plaintiffs meet various requirements, none of which includes notice to the Hawaii Attorney General. I am aware of two courts that have found that there is not a conflict between Rule 23 and Hawaii's statute. *In re Lipitor Antitrust Litig.*, 2018 WL 4006752, at \*13 (D.N.J. Aug. 21, 2018) ("[T]he Court finds that Rule 23 is not 'sufficiently broad' to cover the state statutory notice provisions."); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at \*15 (D. Mass. July 20, 2016) (same). I find that this conclusion does not comport with *Shady Grove*.

In *Shady Grove*, the Supreme Court considered whether a New York law prohibiting class actions in any suit seeking statutory penalties precluded a federal court from exercising diversity jurisdiction over a class action seeking such damages. 559 U.S. at 397–98. The Second Circuit, using reasoning similar to that in *In re Lipitor* and *In re Asacol*, had held that the rule did not conflict with Rule 23 because "they address different issues. Rule 23 . . . concerns only the criteria for determining whether a given class can and should be certified," whereas the New York rule "addresses an antecedent question: whether the particular type of claim is eligible for class treatment in the first place—a question on which Rule 23 is silent." *Id.* at 399. The Supreme Court disagreed, finding that Rule 23 is not silent on the question of whether a particular claim is eligible for class treatment. The Court found, on the contrary, that Rule 23 empowers a federal court to certify a class as to any type of claim, so long as the Rule's criteria are met. *Id.* at 399–400, 406. Therefore, a state law that restricts the types of claims eligible for class treatment beyond the limits established by Rule 23 conflicts with the federal rule. *See id.* at 401.

The situation here is identical. Hawaii's law includes a limitation on the types of claims eligible for class treatment and this limitation is absent from Rule 23. Therefore, I find that Hawaii's law conflicts with Rule 23, and I agree with the district courts that have concluded that

11

Hawaii's requirement applies in federal court only if it is substantive, rather than procedural. *See In re Propranolol*, 249 F. Supp. 3d at 728; *In re Aggrenox*, 94 F. Supp. 3d at 253–54.

The two courts to address this question have held that Hawaii's statute is procedural, not substantive. *In re Aggrenox*, 94 F. Supp. 3d at 254 ("I cannot conclude on the basis of the arguments before me that the section 480-13.3 procedural prerequisites are sufficiently a 'part of a State's framework of substantive rights or remedies' to be controlling in federal court"); *In re Propranolol*, 249 F. Supp. 3d at 728 (finding that "the procedural rules set forth in Hawaii's antitrust statute" do not apply in federal court).

I agree. Under Justice Stevens's concurrence in *Shady Grove*, a state procedural rule should be applied in federal court where it "exist[s] to influence substantive outcomes and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." 559 U.S. at 419–20 (internal citations omitted). Here, Hawaii's law regulates only when private plaintiffs can litigate the case. It does not alter the substantive elements of plaintiffs' claims. Most importantly, it is surely no more substantive than the statute at issue in *Shady Grove*, which barred class action suits for an entire category of claims. *Id.* at 396. Under *Shady Grove*, Rule 23 provides the procedural requirements for bringing a class action in federal court, and those are the requirements that govern here.

Allergan's motion to dismiss the Hawaii claim is denied.

### *Minnesota*

In the Consolidated Complaint, EPPs invoke three Minnesota statutes: Minn. Stat. § 325D.51; § 325D.52; and § 8.31. Allergan moves to dismiss only plaintiffs' claim under § 8.31, claiming lack of specificity. In their opposition, EPPs clarify that they are relying on subdivisions 1 and 3a of § 8.31. Subdivision 3a establishes private rights of action for violations of the 10

12

Minnesota statutes, including §§ 325D.51 and 325D.52, that are listed in subdivision 1. While plaintiffs' claims were sufficiently clear in the Consolidated Complaint, their further clarification in their opposition resolved any possible ambiguity.

Allergan's motion to dismiss the Minnesota claim under § 8.31 is denied.

**Missouri**

EPPs allege that Allergan's anticompetitive scheme violated Missouri's consumer protection statute, the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.020, *et seq.* The MMPA prohibits "unfair" trade practices, § 407.202(1), which courts have found to include monopolistic conduct, such as filing sham patent litigation as alleged in the Consolidated Complaint. *Sheet Metal Workers*, 737 F. Supp. 2d at 416–17; *Picone v. Shire PLC*, 2017 WL 4873506, at \*2, \*18 (D. Mass. Oct. 20, 2017). Unlike Missouri's antitrust statute, Mo. Rev. Stat. §§ 416.011, *et seq.*, the MMPA permits recovery by indirect purchasers. *Picone*, 2017 WL 4873506, at \*17; *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007).

The statute, however, applies only to claims by "[a]ny person who purchases or leases merchandise primarily for personal, family, or household purposes and thereby suffers an ascertainable loss of money or property." Mo. Rev. Stat. § 407.025.1. Allergan argues that EPPs thus lack standing because they are health and welfare funds, which purchase Restasis® for use by their members, as opposed to the members themselves.[5] EPPs respond that the statute's text does not specify that the purchase must be for *one's own* personal use, and that plaintiffs are purchasing Restasis® on behalf of their members, who are using it for personal or familial purposes.

---

[5] It is undisputed that "person" is defined to include corporate entities, associations, and agents. Mo. Rev. Stat. § 407.010(5). Allergan contends only that the statute does not apply to plaintiffs because they did not purchase Restasis® primarily for their own purposes.

Numerous courts have interpreted the MMPA to confer standing exclusively on those who purchase property for their own use. *See, e.g.*, *In re Asacol*, 2016 WL 4083333, at *12; *Los Gatos Mercantile, Inc*, 2015 WL 4755335, at *23; *In re Actimmune Marketing Litig.*, 2010 WL 3463491, at *12 (N.D. Cal. Sept. 1, 2010); *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2006 WL 2632328, at *10 (E.D. Mo. Sept. 13, 2006). These courts reason that, when an insurance plan makes a purchase, it does so, not for personal purposes, but for the plan's business purposes, *i.e.,* to fulfill its side of a contractual relationship with its members, who pay premiums for its coverage. *E.g., In re Express Scripts*, 2006 WL 2632328, at *10. EPPs have not pointed to any authority supporting their position. I thus join the other district courts to have considered this question and hold that the MMPA does not confer standing on plaintiffs.

Defendant's motion to dismiss EPPs' Missouri claim is granted.

## 2.  **In-State Impact under Tennessee and Wisconsin Law**

Allergan argues that the Consolidated Complaint fails to state a claim with respect to EPPs' antitrust claims under Tennessee and Wisconsin law. Each of these laws applies only if a defendant's out-of-state conduct had a "substantial" effect on the state. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005); *Meyers v. Bayer Ag*, 735 N.W.2d 448, 451 (Wis. 2007). EPPs allege that Restasis® is a widely purchased drug in every state, with $1.5 billion in sales in the U.S. in 2016, but, as Allergan points out, the complaint does not specifically reference the scope of harm in Tennessee or Wisconsin.

Allergan's precise argument was rejected in *Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166 (E.D. Pa. 2009):

> The Court recognizes that the allegations of the amended complaint contain little information as to the specific impact of the defendants' alleged conduct with respect to any particular state. However, the plaintiffs allege overcharges on a substantial amount of Wellbutrin

14

> XL across the United States, including Tennessee, and the Court will not dismiss the plaintiffs' Tennessee claims at this time for failure to allege the specific extent of any impact on the Tennessee economy. The Court finds that the amended complaint contains facts that "raise a reasonable expectation that discovery will reveal evidence of" a substantial effect on the Tennessee economy sufficient to prove a claim under that state's antitrust law. *Twombly,* 127 S.Ct. at 1965.

I agree with, and adopt, this reasoning.

Defendant's motion to dismiss the claims under Tennessee and Wisconsin law is denied.

### B. Plaintiffs' State Law Consumer Protection Claims

Plaintiffs' Third Claim for Relief is premised on the theory that Allergan acted in a manner that was unfair, unconscionable, and deceptive in that it misled the USPTO, the FDA, the courts, and the public about the validity of the second-wave Restasis® patents, causing consumers to overpay. EPPs do not plead, and explicitly state in their opposition that they are not pursuing, any claims based on fraudulent misrepresentations to consumers. (Mem. in Opp. at 17.) EPPs invoke the consumer protection laws of five states—Arkansas, California, Colorado, Pennsylvania, and Vermont—to provide the basis for their third claim. Defendant has moved to dismiss these claims.

#### *Arkansas*

Just as they did to support their claim of antitrust liability under the ADTPA, plaintiffs rely on that statute's catch-all provision, Ark. Code Ann. § 4-88-107(a)(1), and specifically its proscription of "unconscionable" business practices, to support a consumer protection theory of liability. Although they cite the same language of the statute to support both their Second and Third Claims, plaintiffs assert that their claims are not redundant. At oral argument, plaintiffs expressed the view that a jury could find Allergan's actions unconscionable, but not necessarily anticompetitive. In any event, a plaintiff may plead claims in the alternative, and therefore there is no basis to dismiss either one of these claims on the ground of redundancy. Fed. R. Civ. P. 8(d)(2)–

(3) (plaintiffs "may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count or in separate ones . . . regardless of consistency").

Defendant again argues that EPPs' claim must fail because the ADTPA expressly requires reliance, which plaintiffs have not pled. As discussed above, *supra* pp. 7–8, I agree with defendant that plaintiffs cannot pursue damages concerning any purchases that occurred after August 1, 2017, because of EPPs' failure to plead reliance. Otherwise, I reject defendant's argument. In the context of this case, plaintiffs have adequately pled causation because they have alleged that defendant's actions slowed the entry of generic versions of Restasis® into the marketplace, causing them harm.

Allergan's motion to dismiss this claim is granted to the extent that the claim includes purchases that occurred after August 1, 2017. The motion is otherwise denied.

### *California*

California's Unfair Competition Law ("UCL") prohibits any business act or practice that is "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code § 17200. Plaintiffs assert that Allergan's conduct violated the first two prongs—unlawful and unfair. The law is "sweeping in scope." *Sheet Metal Workers*, 737 F. Supp. 2d at 406; *see also Saavedra v. Eli Lilly & Co.*, 2013 WL 6345442, at *5 (C.D. Cal. Feb. 26, 2013). Claims of monopolization via sham litigation and citizen petitions fall within the UCL's scope. *In re Wellbutrin XL*, 260 F.R.D. at 160; *Sheet Metal Workers*, 737 F. Supp. 2d at 406.

Defendant argues that the statute requires reliance when the claim is based on a misrepresentation. But "reliance on misrepresentations, as opposed to *causation* more generally, is [not] required for UCL claims which fall under the unfair or unlawful prongs." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007). In a case involving a claim of a misrepresentation about a product, a plaintiff must show that she relied on that representation in

16

purchasing the product in order to establish causation. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. Nov. 10, 2014). Here, however, causation is established if Allergan's actions prevented generic competitors from entering the market. (*See* Sept. 18, 2018 Op. and Order at 33–36.) Plaintiffs need not plead reliance.

Defendant's motion to dismiss the UCL claim is denied.

### *Colorado*

EPPs bring a claim under Colo. Rev. Stat. § 6-1-105(1), the "deceptive trade practices" section of the Colorado Consumer Protection Act ("CCPA"). This provision prohibits numerous, enumerated trade practices and does not contain a "catch-all" provision. Thus, "a plaintiff stating a [CCPA] claim must allege that the conduct in question falls into at least one of those categories." *Overturf v. Rocky Mountain Chocolate Factory, Inc.*, 2009 WL 10675269, at *6 (C.D. Cal. Feb. 13, 2009); *accord Nauert v. Ace Props. & Cas. Ins. Co.*, 2005 WL 2085544, at *5 (D. Colo. Aug. 27, 2005).

EPPs assert that Allergan engaged in deceptive trade practices under § 6-1-105(1)(e), which prohibits "knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, [or] benefits . . . of goods," when it misrepresented facts to the USPTO to obtain the second-wave patents and misrepresented the validity of the patents to the FDA. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 223–24 (S.D.N.Y. 2012) (holding that deceptive citizen petitions to the FDA as well as fraudulent representations to the USPTO are actionable under this subsection of the CCPA, and that the deceptive conduct does not need to be aimed at consumers). Allergan argues that the Consolidated Complaint is not sufficiently specific to provide notice of that claim, given that it cites only to the entire consumer protection statute, which covers more than 50 types of deceptive conduct. *See* § 6-1-105(1). For the reasons stated above with

17

regard to plaintiffs' antitrust claims, I do not find this argument convincing. And, I am persuaded by the reasoning in *In re DDAVP* and find that EPPs' allegations state a claim under § 6-1-105(1)(e) of the CCPA.

EPPs also assert that Allergan engaged in unfair trade practices, and that these, too, are prohibited by the CCPA. The word "unfair" appears in only one place in the CCPA, when it states that "[t]he deceptive trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." § 6-1-105(3). The statute therefore does not appear to proscribe unfair trade practices, but only deceptive ones.

Despite the statutory language, some courts have found that, to satisfy the first element of a CCPA claim, a plaintiff may show that the defendant engaged "in an *unfair or* deceptive trade practice." *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *26 (D. N.J. July 20, 2017) (emphasis added); *In re DDAVP*, 903 F. Supp. 2d at 223. These cases rely on *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003), which does state that an unfair or deceptive trade practice is an element of a CCPA claim.

I agree, however, with the conclusion in *Sheet Metal Workers*, 737 F. Supp. 2d at 406–08, that there is no standalone claim under the CCPA for an "unfair" trade practice. The *Sheet Metal Workers* court observed that the insertion of "an unfair or" in *Rhino Linings*' articulation of the first element of a CCPA claim is dictum. *See id.* at 407–08. It further noted that the plaintiffs, like EPPs here, "provide no Colorado or other case where a plaintiff proceeded with a CCPA claim based on an unfair but not deceptive trade practice." 737 F. Supp. 2d at 408; *accord In re New Motor Vehicles Canadian Exp.*, 350 F. Supp. 2d at 180 n.28.

18

Because EPPs have stated a claim for a deceptive trade practice, defendant's motion to dismiss the CCPA claim is denied. However, insofar as plaintiffs bring a separate claim for unfair trade practices under the statute, it is dismissed.

### *Pennsylvania*

Plaintiffs bring a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1, *et seq.* In the Consolidated Complaint, EPPs allege that Allergan violated § 201-3 by engaging in "unfair methods of competition and unfair or deceptive acts or practices." Allergan initially notes that the UTPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include 20 enumerated types of conduct, as well as a catch-all provision prohibiting "any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." § 201-2(4). While EPPs do not specify in the Consolidated Complaint whether they rely on one of the enumerated types of conduct or the catch-all provision, they clarify in their opposition that their theory is that Allergan was deceptive when it filed sham citizen petitions and patent infringement lawsuits in an attempt to retain its monopoly, as alleged in the Consolidated Complaint.

As Allergan argues, however, this theory is not covered by the UTPCPL. A claim for deceptive conduct under that statute requires a plaintiff to plead reliance, and EPPs here do not allege that they bought Restasis® in reliance on Allergan's misrepresentations. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 n.4 (3d Cir. 2008); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 4235773, at *6–8 (E.D. Pa. Sept. 25, 2017). *Hunt* was a putative class action alleging that the defendant tobacco company "engaged in anticompetitive behavior that artificially inflated the price of the company's moist smokeless tobacco products, causing purchasers to pay . . . more than they would have paid in an efficient market." 538 F.3d at 219.

The Third Circuit stated that the "Supreme Court of Pennsylvania has consistently interpreted the

Consumer Protection Law's private-plaintiff standing provision's causation requirement to

demand a showing of justifiable reliance, not simply a causal connection between the

misrepresentation and the harm." *Id.* at 222. It then clarified in a footnote that

> [a] mere causal connection can be established by, for instance, proof
> that a misrepresentation inflated a product's price, thereby injuring
> every purchaser because he paid more than he would have paid in
> the absence of the misrepresentation. A justifiable-reliance
> requirement, by contrast, requires the plaintiff to go further—he
> must show that he justifiably bought the product in the first place (or
> engaged in some other detrimental activity) because of the
> misrepresentation.

*Id.* at 222 n.4 (citing *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 445-46 (Pa. 2001)); *accord Toy v.*

*Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007) ("*Weinberg* necessarily states that a plaintiff

alleging violations of the Consumer Protection Law must prove justifiable reliance.").

Here, plaintiffs have alleged a causal connection, but they have not alleged that they bought

the product as a result of Allergan's misrepresentations to the USPTO or the FDA. Their argument

that they have alleged enough to establish a claim under the UTPCPL was expressly rejected in

*Hunt*. EPPs rely on *Sheet Metal Workers*, which held that the allegation that defendant filed sham

patent infringement lawsuits to retain their monopoly was sufficient to state a claim under this

Pennsylvania statute. 737 F. Supp. 2d at 421. I am not, however, persuaded by that court's

reasoning, which fails to address both *Weinberg* and *Toy*.

Because justifiable reliance is an element of any claim under the UTPCPL, EPPs' claim

under this provision is dismissed.

### *Vermont*

EPPs bring a claim under the Vermont Consumer Fraud Act ("VCFA"), 9 V.S.A. §

2461(b), which allows "[a]ny consumer who contracts for goods . . . in reliance upon false or

fraudulent representations . . . or who sustains damages or injury as a result of any false or fraudulent representations . . . [to] sue and recover from the seller . . . the amount of his or her damages[.]" Defendant argues that EPPs are not "consumers" because the VCFA defines a consumer as, in relevant part, "any person who purchases . . . goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household . . . ." *Id.* § 2451a(a). This definition, Allergan argues, leaves out EPPs, who purchased Restasis® not for their own use or benefit, but in the ordinary course of their business pursuant to the contractual relationship between them and their members.

EPPs counter that the Vermont Supreme Court has held "that business entities are entitled to the same rights under the Act as other consumers." *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 965 A.2d 460, 467 (Vt. 2008). This misses the point. If a business entity purchased a good or service for its own benefit, it would have standing to sue under the statute. Here, however, the EPPs did not purchase Restasis® for themselves. *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *9 (D. Conn. Aug. 9, 2016) ("[The VCFA's] definition of 'consumer' allows businesses to sue as consumers with respect to the products they *use* as consumers. The fact that [plaintiff's] members are consumers, and that [plaintiff] co-purchases or reimburses for consumer products that its members use, does not make [plaintiff] a consumer of those products."). Plaintiffs have cited no case showing that, under these circumstances, they constitute consumers.

Because EPPs lack standing to bring a claim under the VCFA, this claim is dismissed.[6]

---

[6] Because I find that EPPs lack standing, I do not consider defendant's alternative argument that plaintiffs' VCFA claim must be dismissed because they have not alleged that Allergan's misrepresentations caused them to buy Restasis®.

21

## V.    CONCLUSION

Allergan's motion to dismiss EPPs' antitrust claims, in their Second Claim for Relief in the Consolidated Complaint, brought under Missouri and Puerto Rico law is granted, and those claims are dismissed. Allergan's motion to dismiss plaintiffs' antitrust claim brought under Arkansas law is granted to the extent that the claim includes purchases that occurred after August 1, 2017. Allergan's motion to dismiss the remaining state law claims in the Second Claim for Relief is denied.

Allergan's motion to dismiss EPPs' consumer protection law claims, in their Third Claim for Relief in the Consolidated Complaint, brought under Pennsylvania and Vermont law is granted, and those claims are dismissed. Allergan's motion to dismiss plaintiffs' consumer protection claims brought under Arkansas law is granted to the extent that the claim includes purchases that occurred after August 1, 2017. Insofar as plaintiffs allege a claim for an unfair trade practice, as distinct from a claim for a deceptive trade practice, under Colorado Law, such a claim is dismissed. Allergan's motion to dismiss the remaining state law claims in the Third Claim for Relief is denied.

Dated:        November 8, 2018
              Brooklyn, New York

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

22