# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | MDL No. 2819<br><br>18-MD-2819 (NG) (LB)<br><br>ORAL ARGUMENT REQUESTED |
| This Document Relates To:  All End-Payor Plaintiff Class Actions | |

**ALLERGAN, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS STATE LAW CLAIMS IN END-PAYOR PLAINTIFFS'
CORRECTED FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................1

II. RELEVANT BACKGROUND ............................................................................................1

III. LEGAL STANDARD ...........................................................................................................3

IV. ARGUMENT ........................................................................................................................3

    A. The EPPs' Vermont Consumer Protection Claim Is Not Adequately Pled .............3

    B. The EPPs' Idaho Consumer Protection Claim Fails as a Matter of Law .................7

V. CONCLUSION ...................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 3

*Carter v. Gugliuzzi*,
   716 A.2d 17 (Vt. 1998) ....................................................................................................... 4, 5

*In re DDAVP*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012) ................................................................................ 8, 9

*In re Dynamic Random Access Memory Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................................. 9

*Johnson v. Fankell*,
   520 U.S. 911 (1997) ............................................................................................................... 3

*In re Lidoderm Antitrust Litigation*,
   103 F. Supp. 3d 1155 (N.D. Cal. 2015) .............................................................................. 8, 9

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) ........................................................................................ 9

*In re Propranolol Antitrust Litig.*,
   249 F. Supp. 3d 712 (S.D.N.Y. 2017) .................................................................................... 6

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) .................................................................................. 8, 9

*Terry v. O'Brien*,
   134 A.3d 203 (Vt. 2015) ..................................................................................................... 4, 5

*State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*,
   106 P.3d 428 (Idaho 2005) ..................................................................................................... 7

*In re Western Acceptance Corp., Inc.*,
   788 P.2d 214 (Idaho 1990) ..................................................................................................... 9

**Statutes**

Idaho Code Ann. §§ 48-601, *et seq.* ........................................................................................ 1, 7

Idaho Code Ann. § 48-603(17) ..................................................................................................... 7

Vt. Stat. Ann. tit. 9 §§ 2453, *et seq.* ............................................................................................ 1

I.  INTRODUCTION

As the Court is aware, Allergan previously moved to dismiss all of the End-Payor Plaintiffs' ("EPPs'") claims premised on state consumer protection laws. *See* Dkt. No. 114. The Court granted that motion in part, *see* Dkt. No. 176, and the EPPs subsequently amended their complaint to remove or modify certain state claims. *See* Dkt. No. 210 (EPPs' Corrected First Amended Consolidated Class Action Complaint ("EPP Am. CCAC")). The EPPs' amended complaint also added new, previously unasserted claims predicated upon the consumer protection and/or antitrust laws of eleven states. *Id.* at ¶¶ 220, 228, 239.

This motion to dismiss addresses two of the causes of action in the EPPs' amended complaint: a re-pled claim premised on Vermont consumer protection law, Vt. Stat. Ann. tit. 9 §§ 2453, *et seq.*, and a new claim based on Idaho's consumer protection statute, Idaho Code Ann. §§ 48-601, *et seq.* The Court previously determined, in dismissing the EPPs' Pennsylvania consumer protection claim, that the "EPPs do not plead" and "are not pursuing[] any claims based on fraudulent misrepresentations to consumers." Dkt. No. 176 at 15, 19-20. The same problem exists with respect to the Vermont and Idaho consumer protection claims in the EPPs' amended complaint. These causes of action require allegations of misleading conduct directed to consumers. Because the amended complaint includes no new allegations of misleading consumer-facing misrepresentations, the EPPs' consumer protection claims predicated on Vermont and Idaho law should be dismissed.

II.  RELEVANT BACKGROUND

The named EPPs are "health and welfare funds that purchased (or reimbursed members' purchases of) Restasis® from distributors or retailers," rather than directly from Allergan. Dkt. No. 176 at 1. Like all plaintiffs in this consolidated action, the EPPs seek damages on the theory that Allergan "improperly delay[ed] the market entry of generic competitors to its dry-eye

medication Restasis®," and "the price [the EPPs] paid for Restasis® would have been lower if Allergan had faced competition from generic manufacturers." *Id.*

"The EPPs are precluded from asserting federal damages claims under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which interpreted federal antitrust law to preclude indirect purchasers from recovering damages[.]" Dkt. No. 176 at 1.  The EPPs thus seek damages under a variety of state antitrust and consumer protection laws, many of which have distinct elements due to differing statutory language and/or interpretative state judicial decisions.  *See* Dkt. No. 210 at ¶¶ 220, 228, 239.

In their original consolidated complaint filed on April 4, 2018, the EPPs alleged claims under the consumer protection statutes of Arkansas, California, Colorado, Pennsylvania, and Vermont.  EPP CCAC ¶ 228 (Dkt. No. 53).  Allergan moved to dismiss these claims for various reasons, relying upon the law specific to each state.  Dkt. No. 114.  On November 13, 2018, the Court granted in part and denied in part Allergan's motion to dismiss the EPPs' state consumer protection law claims.  Dkt. No. 176 at 15-22.  The Court permitted the Arkansas, California, and Colorado claims to proceed (as narrowed and interpreted by the Court).  *Id.* at 15-19.  The Court dismissed the EPPs' Pennsylvania consumer protection claim "[b]ecause justifiable reliance is an element of any claim under the [Pennsylvania consumer protection statute]," and the EPPs "have not alleged that they bought the product as a result of Allergan's misrepresentations to the USPTO or the FDA." *Id.* at 20.  The Court dismissed the Vermont consumer protection claim because the EPPs do not qualify as "consumers" under Vermont's Consumer Fraud Act.  *Id.* at 21. "Because [the court] f[ou]nd that EPPs lack standing, [it] d[id] not consider defendant's alternative argument that plaintiffs' VCFA claim must be dismissed because they have not alleged that Allergan's misrepresentations caused them to buy Restasis®." *Id.* at 21 n.6.

In response to this decision, the EPPs filed an amended complaint on December 6, 2018, Dkt No. 190, and a "corrected" version on December 20, 2018, Dkt. No. 210. The EPPs' corrected amended complaint includes, among other things, a re-pled consumer protection claim under Vermont law that is limited to a class of "consumers," and a new consumer protection claim under Idaho law.[1]  EPP Am. CCAC ¶¶ 228.d, f.

### III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"  Dkt. No. 176 at 3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  In ruling on a plaintiff's state law claims, federal courts follow the rulings of the respective state's highest appellate court. *See, e.g.*, *Johnson v. Fankell*, 520 U.S. 911, 916 (1997).

### IV.  ARGUMENT

**A.  The EPPs' Vermont Consumer Protection Claim Is Not Adequately Pled**

The EPPs' amended complaint retains the original complaint's claim of "unfair and deceptive acts and practices" under the Vermont Consumer Fraud Act.  EPP CCAC ¶ 228.e.[2]  As

---

[1] The EPPs "made five primary changes to the [original] complaint," as they explained in their December 6, 2018 letter to the Court, Dkt. No. 189:  specifically, they (1) dismissed claims under the laws of Puerto Rico and Pennsylvania; (2) limited claims under Arkansas law to purchases before August 1, 2017; (3) limited claims under the laws of Missouri and Vermont to cover only purchases made by consumers; (4) limited the claim under Colorado law to deceptive acts and practices; and (5) added new antitrust and/or consumer protection claims under the laws of Idaho, Maine, Massachusetts, Michigan, Mississippi, Montana, North Dakota, Rhode Island, South Dakota, Utah, and West Virginia.

[2] The EPPs' original consolidated complaint also included an "unfair methods of competition" claim pursuant to the Vermont Consumer Fraud Act, but the EPPs removed that language in the amended complaint.  *See* Dkt. No. 189-2 at ¶ 228.f (redline version of EPPs' amended complaint showing changes compared to EPPs' original complaint).

3

noted above, the Court did not previously reach Allergan's argument that this claim is defective due to the EPPs' failure to allege consumer-facing conduct, because the Court found that the EPPs did not qualify as "consumers" under the statute, and thus lacked standing. Dkt. No. 176 at 21 & n.6. The EPPs amended their Vermont consumer protection claim to respond to the threshold standing issue by pleading a narrow, Vermont-specific class of "consumers," but did not make any changes to the underlying substantive allegations supporting this claim. EPP Am. CCAC ¶ 228.f. Thus, at this point Allergan's alternative argument is again properly before the Court, and the parties' prior briefing remains applicable.

The EPPs' opposition to Allergan's previous motion to dismiss stated that "to establish a claim under the Vermont Consumer Fraud Act," a plaintiff must allege "'a representation, omission, *or practice likely to mislead consumers.* . . .' *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998)." Dkt. No. 115 at 22 (emphasis in original). There are also two additional elements, as is reflected by the full description of the cause of action by the Vermont Supreme Court in *Carter v. Gugliuzzi*: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." 716 A.2d at 23. The Vermont Supreme Court has reaffirmed that the third element is "mandatory," explaining that the "allegedly deceptive act" must be "'material' in the sense that it was likely, from an objective viewpoint, to have impacted [the consumer's] decision to [purchase]." *Terry v. O'Brien*, 134 A.3d 203, 214 (Vt. 2015).

Allegan previously argued that EPPs' original complaint included "no allegation [that] the EPPs bought Restasis® *because of* Allergan's representations about the validity of its patents,

4

and thus [there is] no plausible inference that Allergan 'affect[ed] the consumer's conduct or decision regarding the product.'" Dkt. No. 114-1 at 18 (quoting *Carter*, 716 A.2d at 23). Because the EPPs' amended complaint does not include any additional allegations regarding Allegan's substantive conduct, this characterization applies equally to the EPPs' amended pleadings. Indeed, the only conduct the EPPs allege in support of their consumer protection claims is "fraudulent and deceptive acts includ[ing] intentionally misleading the PTO, the FDA, the courts, and the public about the validity of the claims underlying the second-wave patents." EPP Am. CCAC ¶ 224. What is required, but still lacking in the EPPs' amended complaint, are allegations that the alleged misrepresentations were "likely . . . to have impacted" consumer purchase decisions. *Terry*, 134 A.3d at 214.

The EPPs argued previously that their allegations met this requirement, contending (1) that consumers "bought Restasis because of Allergan's deceptive conduct and [] the [alleged] conduct was likely to affect the consumer's conduct," and (2) that Allergan's actions "contributed to a misleading public picture of why no reasonably priced version of Restasis was available." Dkt. No. 115 at 22. However, there are no such allegations on the complaint, and both contentions are flawed. The EPPs' first contention amounts to nothing more than vacuous, conclusory statements lacking any plausible factual support in the complaint. There were no allegations in the EPPs' original complaint explaining how Allergan's citizen petitions to the FDA or patent procurement, enforcement, and/or licensing activities caused any consumer to purchase Restasis or otherwise were "likely to affect the consumer's conduct." *Carter*, 716 A.2d at 23. Nor have any such allegations been added in the amended complaint. Moreover, it would be entirely speculative to presume that consumers (or their physicians) elected to purchase (or

5

prescribe) Restasis® based on Allergan's citizen petitions to the FDA or the patent-related conduct the EPPs challenge.

The EPPs' second contention—that Allergan's conduct misled consumers as to "why no reasonably priced version of Restasis was available"—at best describes an extremely speculative and attenuated link between the alleged conduct and consumer choice. The court in *In re Propranolol Antitrust Litigation*, addressing a similarly speculative claim that a conspiracy to fix prices deceived consumers by "conceal[ing] the true cause of the[] price increases," held that such concealment was not a "deceptive act" under Vermont law, and explained that "antitrust schemes are deceptive where, for example, the defendant secretly altered its product as part of the scheme." 249 F. Supp. 3d 712, 729 (S.D.N.Y. 2017). The EPPs simply have not alleged that consumers exposed to the supposed misrepresentations purchased Restasis® in reliance upon them—the typical and logical way to allege that misrepresentations were material to consumer purchase decisions. In opposing Allergan's earlier motion to dismiss, the EPPs argued that the misconduct alleged in their complaint painted a "public picture" that misled consumers into purchasing Restasis®, a claim that was not included in the original complaint and that lacked any specific factual support in the original complaint. And again, the amended complaint adds nothing to address these shortcomings.

This Court has already considered and rejected the EPPs' assertions that their pleadings adequately allege conduct by Allergan that materially impacted consumer choice. Specifically, the Court explained that Pennsylvania's consumer protection statute "demand[s] a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." Dkt. No. 176 at 19-20 (citation and internal quotation marks omitted). The Court then found that the "EPPs do not plead, and explicitly state in their opposition that they are not pursuing, any

6

claims based on fraudulent misrepresentations to consumers," and the EPPs "do not allege that they bought Restasis® in reliance on Allergan's misrepresentations." *Id.* at 15, 19-20.

As noted above, the EPPs have done nothing to expand or augment their allegations of misleading conduct or consumer reliance upon such conduct. There still are no allegations that Restasis® consumers knew of Allergan's alleged misrepresentations or that the alleged misrepresentations affected consumer decisions to purchase the product. Rather, the crux of the EPPs' allegations is that consumers did not purchase generic Restasis® because it was not available, not as a consequence of consumer deception. Thus, the EPPs' current Vermont consumer protection claim should be dismissed for the same reason that their Pennsylvania consumer protection claim previously was dismissed—allegations of consumer-directed misrepresentations impacting purchase decisions are required by the relevant state law, and yet the EPPs' operative complaint fails to supply any such allegations.

**B.     The EPPs' Idaho Consumer Protection Claim Fails as a Matter of Law**

The EPPs' amended complaint includes a new claim of "deceptive and unconscionable conduct" under the Idaho Consumer Protection Act ("ICPA"), Idaho Code Ann. §§ 48-601, *et seq.* The ICPA prohibits unconscionable and deceptive conduct, where such conduct is directed towards consumers. With regard to allegedly unconscionable conduct, the Idaho Supreme Court has specifically limited the applicability of the ICPA to "unconscionable 'sales conduct' that is directed at the consumer." *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 435 (Idaho 2005) (addressing the application of the ICPA in the context of an antitrust theory of harm). With regard to deceptive conduct, the language of the ICPA clearly is limited to conduct directed at consumers. Indeed, the broadest and most inclusive form of deceptive conduct encompassed by the statute is acts and practices that are "misleading, false, or deceptive to the

7

consumer." Idaho Code Ann. § 48-603(17). In other words, the plain language of the statute makes clear that misleading conduct directed "to the consumer" is a statutory minimum.

Courts routinely dismiss Idaho consumer protection claims premised on antitrust theories where, as here, the theory challenges conduct that was not directed towards consumers. For example, the plaintiffs in *In re Lidoderm Antitrust Litigation* alleged "fraud on the [USPTO] . . . during the prosecution of the [relevant] Patent," and alleged "that defendants deceived the public by selling Lidoderm patches at prices that were not the result of fair and open market competition, but rather the result of the illegal payoffs to [a potential generic competitor]." 103 F. Supp. 3d 1155, 1165 (N.D. Cal. 2015). The *Lidoderm* court dismissed the deceptive practices claim because "to be actionable, the conduct at issue must be directed to consumers. None of the conduct alleged here satisfies that requirement." *Id.* at 1168. And, in *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, a case again involving antitrust claims of improper generic delay, the court dismissed an ICPA-based claim because the defendant's "conduct was at all times directed towards the PTO and generic manufacturers." 737 F. Supp. 2d 380, 409-11 (E.D. Pa. 2010). The court specifically noted the key missing allegations, which are also missing here: The defendant "is not accused of providing false information about [the pharmaceutical product at issue] or otherwise misleading consumers about the nature of [that product]." *Id.* at 411.

One federal district court has permitted an ICPA claim to proceed where the theory of harm involved deception directed towards a third party rather than the consumer. *See In re DDAVP*, 903 F. Supp. 2d 198, 225 (S.D.N.Y. 2012). The court in the *Lidoderm* case described above considered and rejected *DDAVP*'s reasoning. *See* 103 F. Supp. 3d at 1168. And each of *DDAVP*'s three reasons for expanding the ICPA beyond its text are flawed and unpersuasive.

8

First, *DDAVP* asserted that "Defendants ha[d] not cited case law in which a court has dismissed consumers' claims under the ICPA if they suffered monetary loss as a result of a defendant's deceptive acts toward a third party." *DDAVP*, 903 F. Supp. 2d at 225. In fact, at least three courts have dismissed such claims. *See, e.g.*, *Lidoderm*, 103 F. Supp. 3d at 1168 (explained above); *Sheet Metal Workers*, 737 F. Supp. 2d at 411 (explained above); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 184 (D. Me. 2004) (dismissing claim against two defendants because plaintiffs "do not allege that [defendants] provided services to or on behalf of consumers"). Second, *DDAVP* declined to follow the reasoning of *Sheet Metal Workers* on the grounds that the *Sheet Metal Workers* decision also included a finding that the defendant did not engage in deceptive conduct. *DDAVP*, 903 F. Supp. 2d at 225. But the presence (or absence) of *factual* determinations are irrelevant to the validity of the *legal* holding that the ICPA is limited to consumer-facing conduct. Third, *DDAVP* relied on a mistaken understanding that the Idaho Supreme Court interprets the ICPA to reach beyond its text. The court in *DDAVP* reached this conclusion based on a 1990 decision in which the Idaho Supreme Court stated it "believed" "the intent of the legislature [is] that the Act be liberally construed." *DDAVP*, 903 F. Supp. 2d at 224-25 (citing *In re Western Acceptance Corp., Inc.*, 788 P.2d 214, 216 (Idaho 1990)). *DDAVP* overlooked what later courts have pointed out: *Western Acceptance* "predates the *Wasden* opinion that explicitly construes the statute in question" and held "that the [I]CPA defines the sum total of actionable conduct under it." *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1110 (N.D. Cal. 2007).

Thus, properly applied, Idaho consumer protection law is limited to conduct "directed at the consumer." Such conduct is not alleged here. As noted above, the EPPs' amended complaint alleges misrepresentations to "the PTO, the FDA, the courts, and the public." EPP

9

Am. CCAC ¶ 224. The vague reference to "the public" in general is not an allegation that Allergan made misrepresentations to consumers. As the Court previously explained, the "EPPs do not plead . . . claims based on fraudulent misrepresentations to consumers." Dkt. No. 176 at 15.

## V. CONCLUSION

For the foregoing reasons, Allergan respectfully requests that the Court dismiss the EPPs' Vermont and Idaho consumer protection claims.

Dated: January 7, 2019 Respectfully submitted,

By: _____
M. Sean Royall
Jason C. McKenney
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel.: (214) 698-3100
Fax: (214) 571-2900
sroyall@gibsondunn.com
jmckenney@gibsondunn.com

Richard H. Cunningham
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
Tel.: (303) 298-5700
Fax: (303) 298-5907
rhcunningham@gibsondunn.com

Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-4035
estock@gibsondunn.com

*Attorneys for Defendant Allergan, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2019, I emailed the foregoing document, **ALLERGAN, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS STATE LAW CLAIMS IN END-PAYOR PLAINTIFFS' CORRECTED FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**, to counsel of record for the Plaintiffs in accordance with the local rules of Hon. Nina Gershon.

Dated:  January 7, 2019                                                                  /s/ Matthew Parrott
                                                                                                          Matthew Parrott