**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | 18-MD-2819 (NG) (LB) |
| THIS DOCUMENT APPLIES TO:<br><br>**All Direct Purchaser Class Actions:**<br><br>*FWK Holdings, LLC v. Allergan, Inc.*, 18-cv-00677 (E.D.N.Y.);<br><br>*Rochester Drug Co-Operative, Inc. v. Allergan, Inc.*, 18-cv-00970 (E.D.N.Y.);<br><br>*KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., v. Allergan, Inc.*, No. 18-cv-00974 (E.D.N.Y.); and<br><br>*Meijer, Inc. and Meijer Distribution, Inc. v. Allergan, Inc.*, 19-cv-02563 (E.D.N.Y). | |

**MEMORANDUM OF LAW IN SUPPORT DIRECT PURCHASER CLASS**
**PLAINTIFFS' MOTION FOR REIMBURSEMENT OF EXPENSES,**
**AN AWARD OF ATTORNEYS' FEES, AND SERVICE AWARDS FOR THE**
**CLASS REPRESENTATIVES**

## TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND ................................................................................................2

    A.   The direct purchasers alleged that Allergan violated federal antitrust law and imposed overcharges on the class. ...........................................................2

    B.   The direct purchasers successfully repelled Allergan's motion to dismiss. ...........3

    C.   The direct purchasers engaged in extensive discovery. ............................................4

    D.   The direct purchasers filed for class certification and opposed Allergan's arguments that they must arbitrate instead..............................................................5

    E.   The direct purchasers engaged in substantial expert discovery before settling. ......6

    F.   The direct purchasers negotiated a significant recovery for the class. ...................6

III.  ARGUMENT ......................................................................................................7

    A.   Class Counsel's expenses were reasonable and necessary. .....................................7

    B.   Class Counsel is entitled to reasonable compensation for creating a substantial common fund for the class. .....................................................................9

        1.   Class Counsel's requested one-third fee is fair and reasonable. ...............10

            a.   Class Counsel devoted substantial time and labor to this litigation. ..................................................................................10

            b.   The magnitude and complexities of this litigation favor the award...................................................................................12

            c.   Class Counsel incurred substantial risks in prosecuting this matter. ...................................................................................13

            d.   The quality of Class Counsel's representation was critical to the result....................................................................................15

            e.   The requested fee is reasonable in relation to the settlement........16

            f.   Public policy considerations support the requested fee. ...............16

        2.   The lodestar cross check confirms the reasonableness of Class Counsel's fee request. .....................................................................................17

        3.   Class Counsel notified the class members of their requested fee award. ..20

    C.   The requested service awards are fair and reasonable. ..........................................20

IV.   CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-1775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ............................................10

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...............................................................................12

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-cv-3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ............................................7

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
  No. 00-cv-9413, 2009 WL 762438 (S.D.N.Y. Mar. 24, 2009)...............................................19

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999) ...................................................................................10

*In re BioScrip, Inc. Sec. Litig.*,
  273 F. Supp. 3d 474 (S.D.N.Y. 2017)...................................................................................11

*In re Bisys Sec. Litig.*,
  No. 04-cv-3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007).............................................16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...............................................................................................................9

*Strougo* ex rel. *Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................................10

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................21

*City of Birmingham Ret. & Relief Sys. v. Davis*,
  806 F. App'x 17 (2d Cir. 2020) ........................................................................................9, 10

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)......................................10, 14

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014).................................................................................9, 17

*In re Crazy Eddie Sec. Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993) .......................................................................................10

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13-md-02476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).........................................18

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................................10

*In re DDAVP Direct Purchaser Litig.*,
   No. 05-cv-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) ...............................16, 21, 26

*In re Effexor XR Antitrust Litig.*,
   No. 11-cv-5479, 2014 WL 4988410 (D.N.J. Oct. 6, 2014) ....................................14

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................................ *passim*

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) ...................................................................................9

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................22

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...........................................................10

*Klein* ex rel. *Ira v. PDG Remediation, Inc.*,
   No. 95-cv-4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) .................................10

*In re Keyspan Corp. Sec. Litig.*,
   No. 01-cv-5852, 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ............................13

*Laydon v. Mizubo Bank, Ltd.*,
   Nos. 12-cv-3419, 15-cv-5844, 2017 WL 6372625 (S.D.N.Y. Dec. 12, 2007) .........18

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d. 748 (2d Cir. 1998) .....................................................................19

*In re Lipitor Antitrust Litig.*,
   868 F.3d 231 (3d Cir. 2017) ......................................................................14

*In re Lipitor Antitrust Litig.*,
   No. 12-cv-2389, 2014 WL 4543502 (D.N.J. Sept. 12, 2014) ...............................14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ...................................................................21

*In re Lupron Mktg & Sales Practices Litig.*,
   No. 01-cv-10861, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) .......................15, 17

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y 2002) ........................................................10, 17

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................10

*In re Med. X–Ray Film Antitrust Litig.*,
  No. 93-cv-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ...........................10, 16

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)..................................................................7

*Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*,
  381 U.S. 311 (1965).......................................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985).....................................................................................16

*In re Mun. Derivatives Antitrust Litig.*,
  No. 08-cv-02516, 2016 WL 11543257 (S.D.N.Y. July 8, 2016)........................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................12, 18

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  842 F.3d 34 (1st Cir. 2016)...........................................................................14

*In re Parking Heaters Antitrust Litig.*,
  No. 15-mc-940, 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) .......................16

*In re Priceline.com, Inc. Sec. Litig.*,
  No. 00-cv-1884, 2007 WL 2115592 (D. Conn. July 20, 2007) ........................16

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)........................................................................................9

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2004)......................................................................21

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. 03-cv-85, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .................................22

*In re Revco Sec. Litig.*,
  No. 89-cv-593, 1992 WL 118800 (N.D. Ohio May 6, 1992) ..............................22

*Se. Milk Antitrust Litig.*, No. 07-cv-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ...........................................................................................................16

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  No. 12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ........................21

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)..............................................10

*Spicer v. Chi. Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ..........................................................................................21

*The Pillsbury Co. v. Conboy*,
    459 U.S. 248 (1983)......................................................................................................................9

*In re U.S. Foodservice, Inc. Pricing Litig.*,
    No. 07-md-1894, 2014 WL 12862264 (D. Conn. Dec. 9, 2014)...........................10, 14, 20, 23

*In re Urethane Antitrust Litig.*,
    No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016)..............................................23

*Viafara v. MCIZ Corp.*,
    No. 12 Civ. 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014)...........................................20

*In re Vitamin C Antitrust Litig.*,
    No. 06-md-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...................................9, 12, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................................9, 12, 18

*In re Wellbutrin XL Antitrust Litig.*,
    133 F.Supp.3d 734 (E.D. Pa. 2015) ...........................................................................................14

**Other Authorities**

Final J. & Order of Dismissal Approving Proposed Class Settlement &
    Dismissing Actions, *In re Neurontin Antitrust Litig.*, No. 02-cv-2731 (D.N.J.
    Aug. 6, 2014), ECF No. 105 ......................................................................................................21

Order & Final J. Approving Settlement, *In re Oxycontin Antitrust Litig.*, No. 04-
    md-1603 (S.D.N.Y. Jan. 25, 2011), ECF No. 360 .....................................................................16

Order & Final J. Approving Settlement, *In re Prograf Antitrust Litig.*, No. 11-md-
    2242 (D. Mass. May 20, 2015), ECF No. 678 ...........................................................................21

Order, *Ivax Corp. v. Aztec Peroxides, LLC*, No. 02-cv-593 (D.D.C. Aug. 24,
    2005), ECF No. 78 ......................................................................................................................22

The direct purchaser class plaintiffs, FWK Holdings, LLC ("FWK"), Rochester Drug Co-Operative, Inc. ("RDC"), KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. ("KPH"), Meijer Inc., and Meijer Distribution, Inc. (together "Meijer"), by Class Counsel,[1] respectfully submit this Memorandum in Support of Class Counsel's Motion for Reimbursement of Expenses, an Award of Attorneys' Fees, and Service Awards for the Class Representatives.

## I.      INTRODUCTION

After two years of hard-fought litigation, the direct purchaser class plaintiffs reached an agreement on behalf of themselves and a proposed class of direct purchasers of the drug Restasis to settle claims against defendant Allergan, Inc. ("Allergan") and related entities for $51.25 million.[2] This excellent outcome was a direct result of Class Counsel's subject matter expertise, perseverance, skill, and hard work. To achieve this result, Class Counsel devoted 26,867 hours of highly specialized attorney and paralegal time and incurred $1,936,060.05 in out-of-pocket expenses in their pursuit of class-wide recovery. Class Counsel undertook this investment on a contingent basis, without any guarantee of recovery.

In performing their work, Class Counsel adhered to this Court's Order on Procedures and Guidelines for Class Plaintiffs' Counsel's Time and Expense Submissions ("Fees Protocol"), entered on April 17, 2018.[3] Each individual law firm representing the direct purchasers has

---

[1] "Class Counsel" refers to Interim Lead Class Counsel Hagens Berman Sobol Shapiro LLP along with the eight other firms experienced in pharmaceutical antitrust litigation: Faruqi & Faruqi LLP; Berger & Montague PC; Taus, Cebulash & Landau, LLP; Radice Law Firm, P.C.; Kaplan Fox & Kilsheimer LLP; Sperling & Slater, P.C.; Capshaw DeRieux, LLP; Nussbaum Law Group, P.C., Roberts Law Firm, P.A.; and Nastlaw LLC.

[2] On May 15, 2020, this "Court preliminarily approve[d] the settlement between the Direct Purchaser Class Plaintiffs and Allergan and has determined that it is likely . . . to certify a class" defined as "[a]ll persons who or entities which purchased Restasis in the United States or its territories and possessions directly from Allergan at any time after May 2014 through and including February 16, 2020." "Excluded from the class are Allergan and its officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities" and certain retailer plaintiffs who have settled with Allergan separately. ECF No. 507 ¶¶ 3–6.

[3] ECF No. 62.

sworn to the accuracy of its time and expense records in detailed declarations.[4] Finally, Class Counsel hired professionals to review and audit our time and expense records. The Honorable David R. Herndon, a retired federal judge, reviewed all of Class Counsel's time entries, noting any that were insufficiently detailed or otherwise failed to comply with the Court's Fees Protocol. Class Counsel then struck over 300 entries based on Judge Herndon's recommendations. Similarly, accounting firm Robert A. Zagrodny, CPA reviewed and audited firm's held expenses, ensuring that, e.g., the proper back up was provided. Class Counsel then similarly struck a handful of expenses based on that review.

Class Counsel seek three things: (1) reimbursement of expenses ($1,936,060.05); (2) an award of attorneys' fees equal to one-third of the net settlement fund (after reimbursement of expenses), that is $16,437,979.98; and (3) service awards of $150,000 to each of class plaintiffs and proposed representatives FWK, RDC, and KPH and $75,000 to class plaintiff and proposed representative Meijer (who joined partway through the litigation) for a total of $525,000.

## II.   BACKGROUND

### A.   The direct purchasers alleged that Allergan violated federal antitrust law and imposed overcharges on the class.

This litigation began on November 17, 2017, when FWK filed a direct purchaser antitrust class action in the United States District Court for the Eastern District of Texas.[5] RDC and KPH followed suit on December 11, 2017 and January 25, 2018, respectively.[6] These complaints

---

[4] Exs. A–K to the Decl. of Interim Lead/Liaison Class Counsel Kristen A. Johnson in Supp. of Direct Purchaser Class Plaintiffs' Mot. for Reimbursement of Expenses, an Award of Attorneys' Fees, & Approval of Service Awards for the Class Representatives ("Johnson Decl.").

[5] Class Action Compl. & Jury Trial Demand, *FWK Holdings, LLC v. Allergan, Inc.*, No. 17-cv-747 (E.D. Tex. Nov. 17, 2017), ECF No. 1.

[6] Class Action Compl. & Jury Trial Demand, *Rochester Drug Co-op., Inc. v. Allergan, Inc.*, No. 17-cv-766 (E.D. Tex. Dec. 11, 2017), ECF No. 1; Class Action Compl., *KPH Healthcare Servs., Inc. a/k/a/ Kinney Drugs, Inc. v. Allergan, Inc.*, No. 18-cv-013 (E.D. Tex. Jan. 17, 2018), ECF No. 1.

detailed Allergan's "anticompetitive scheme to extend its monopoly over Restasis and its generic equivalents beyond the May 17, 2014 expiration date of Allergan's original Restasis patents."[7]

On January 31, 2018 and February 14, 2018, the Judicial Panel on Multidistrict Litigation transferred these actions to this Court for centralization and pretrial coordination.[8] On April 4, 2018, the direct purchasers filed an amended consolidated class action complaint.[9]

**B.     The direct purchasers successfully repelled Allergan's motion to dismiss.**

On April 27, 2018, Allergan moved to dismiss the direct purchasers' complaint, arguing that the plaintiffs had not plausibly alleged that Allergan's actions caused the purchasers' injuries.[10] Although Allergan conceded that a district court invalidated its second wave of Restasis patents, it argued that its conduct in procuring those patents and filing citizen petitions with the FDA could not plausibly be the reason, or part of the reason, that a generic version of Restasis was not available. Allergan further argued that its citizen petitions were free speech, immunized by the First Amendment and the *Noerr-Pennington* doctrine. Interim Lead Counsel for the direct purchasers argued in opposition to both Allergan arguments at the motion to dismiss hearing.[11] On September 18, 2008, this Court denied Allergan's motion to dismiss, holding that "the inferences plaintiffs draw—namely, that Allergan's efforts bore fruit in causing delay—are logical and amply support the plausibility requirement."[12]

---

[7] *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 289 F. Supp. 3d 1332, 1334 (J.P.M.L. 2018).

[8] Transfer Order, ECF No. 2; Conditional Transfer Order, ECF No. 13.

[9] ECF No. 52.

[10] Allergan's Notice of Mot. to Dismiss Pls.' Compl. for Failure to Allege Causation, ECF No. 111.

[11] Johnson Decl. ¶ 10.

[12] *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 333 F. Supp. 3d 135, 160 (E.D.N.Y. 2018).

## C.      The direct purchasers engaged in extensive discovery.

While the motion to dismiss was pending, Allergan produced and the direct purchasers reviewed preliminary discovery from the earlier patent infringement litigation.[13] Class Counsel also negotiated an ESI protocol,[14] a confidentiality order,[15] an expert discovery protocol,[16] search terms, and custodians. Where issues could not be resolved through negotiation, Class Counsel briefed them for Court resolution.[17]

During discovery, Allergan produced and Class Counsel reviewed nearly 690,000 documents, totaling over seven million pages.[18] Class Counsel also subpoenaed the generic pharmaceutical manufacturers that submitted Abbreviated New Drug Applications ("ANDAs") to market more affordable versions of Restasis. These subpoenas resulted in the production of an additional 10,511 documents, totaling about 135,000 pages.[19]

Between January 2019 and July 2019, Class Counsel prepared for and took depositions of twelve former and current Allergan employees and two non-party witnesses with Allergan affiliations.[20] Attorneys from the Class Counsel firms served as the lead examiners in twelve of these fourteen depositions.[21] Class Counsel also helped prepare for all, and sometimes served as lead examiner, eight depositions of would-be generic Restasis manufacturers.[22]

---

[13] Johnson Decl. ¶¶ 12–13.

[14] ECF No. 68.

[15] ECF No. 69.

[16] ECF No. 108.

[17] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819, 2018 WL 3007926 (E.D.N.Y. June 4, 2018); *see also* Johnson Decl. ¶¶ 14–15.

[18] Johnson Decl. ¶ 16.

[19] Johnson Decl. ¶ 17.

[20] Johnson Decl. ¶ 18.

[21] *Id*.

[22] Johnson Decl. ¶ 19.

**D.     The direct purchasers filed for class certification and opposed Allergan's arguments that they must arbitrate instead.**

On April 26, 2019, the direct purchasers served their motion for class certification, along with the supporting declaration of their expert economist, Jeffrey Leitzinger.[23] On June 24, 2019, Allergan served its opposition, challenging the adequacy of the proposed class representatives.[24] It also made several novel attacks on the numerosity of the class, arguing that arbitration clauses Allergan inserted into the direct purchasers' distribution agreements after the commencement of this litigation should exclude certain prospective class members.[25]

On May 17, 2019, while the class certification motion was still being briefed, Class Counsel moved to add Meijer as an additional class representative.[26] On May 31, 2019, Allergan opposed the motion, and Class Counsel replied on June 6, 2019.[27] On June 13, 2019, the Court ordered additional briefing on the issue after Allergan was given the opportunity to conduct discovery. On August 23, 2019, Allergan served a motion to compel Meijer to arbitrate, along with its opposition to Class Counsel's motion to add Meijer as a class representative.[28] On September 6, 2019, Class Counsel served their opposition to the motion to arbitrate and reply in support of their motion to add Meijer as a class representative.[29]

On September 25, 2019, Class Counsel argued the direct purchasers' class certification motion and Allergan's motion to compel arbitration. On October 22, 2019, this Court held an evidentiary hearing in support of the direct purchasers' motion for class certification, during

---

[23] ECF No. 385.

[24] ECF No. 386.

[25] *Id.*

[26] ECF No. 288.

[27] ECF Nos. 296, 303.

[28] ECF No. 350.

[29] ECF No. 363.

which Class Counsel examined Allergan employee, Brandon Miller, who had submitted a declaration in support of Allergan's opposition to the class certification motion.[30] Both motions remained pending when the direct purchasers and Allergan reached their settlement agreement.

**E.     The direct purchasers engaged in substantial expert discovery before settling.**

The direct purchasers served eleven expert reports on Allergan (addressing merits and class issues), received twelve reports from Allergan, and then served eleven rebuttal reports on Allergan. These reports covered every aspect of the case, from class certification, damages, and market power to patent fraud, biostatistics, the FDA's citizen petition procedures, and drug formulation.[31] Class Counsel submitted reports from, among others, some of the most respected drug formulation scientists, biostatisticians, healthcare economists, and bioequivalence scholars in the nation, as well as a former FDA Commissioner and Director of the FDA's Office of Generic Drugs. While the direct purchasers settled the litigation during the expert discovery period, Class Counsel deposed four of the defendants' experts and helped prepare for the depositions of another two experts before settling.[32]

**F.     The direct purchasers negotiated a significant recovery for the class.**

Class Counsel successfully negotiated a substantial recovery for the direct purchaser class while facing two significant obstacles: (1) the absence of an FDA-approved generic version of Restasis, still, and (2) novel arbitration arguments (including about anti-assignment and anti-class/aggregated recovery provisions) raised at the class certification stage. While Class Counsel countered these arguments both legally and factually, the defendants' success on either would eviscerate a class-wide claim for relief and potentially preclude individual recoveries too. (As the

---

[30] Minute Entry, Oct. 22, 2019.

[31] Johnson Decl. ¶¶ 27–31.

[32] Johnson Decl. ¶ 30.

Court is familiar with these issues, we do not belabor them here.)

On July 23, 2019, the Court referred this litigation to the Honorable Magistrate Judge Lois Bloom for a settlement conference. Judge Bloom held settlement conferences on August 9, 2019 and September 23, 2019.[33] Through the exchange of formal mediation briefs, as well as informal settlement discussions, the direct purchasers and Allergan eventually reached an agreement in January of 2020. On January 18, 2020, Allergan and the direct purchasers executed a binding term sheet.[34] On February 25, 2020, the parties filed their executed settlement agreement and attachments thereto with the Court.[35] On May 15, 2020, this Court preliminarily approved that settlement.[36]

## III.   ARGUMENT

### A.   Class Counsel's expenses were reasonable and necessary.

"It is well established that counsel who obtain a common settlement fund for a class are entitled to the reimbursement of expenses that they advance to a class."[37] Class Counsel have incurred $1,948,635.05 in litigation expenses.[38] This figure is reasonable in a complex case like this one. The expenses for which Class Counsel seek reimbursement are the type of routine costs charged to fee-paying clients, such as filing fees, court reporting fees, expert witness fees, document management/database hosting fees, and travel costs associated with depositions and

---

[33] Johnson Decl. ¶¶ 32, 34.

[34] Johnson Decl. ¶ 36.

[35] Johnson Decl. ¶ 37.

[36] ECF No. 507.

[37] *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015); *see also In re Arakis Energy Corp. Sec. Litig.*, No. 95-cv-3431, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.").

[38] Johnson Decl. ¶¶ 41–44, 56; *see also id.* ¶¶ 45–49, 53–54. As addressed in the Johnson Declaration (¶ 50), this amount does *not* include anticipated future expenses; Class Counsel expects to ask the Court to approve payment of any additional expenses in connection with seeking final approval of the settlement.

hearings.

Class Counsel have litigated this case judiciously and efficiently, collaborating with the other plaintiff groups when possible (including sharing virtually all experts) to minimize the expense to the class. By doing so, Class Counsel were able to keep the costs associated with this necessary expert work low while effectively litigating the complex issues implicated by this action. Despite this efficient approach, unsurprisingly, the largest category of incurred expenses relates to expert work; these expert expenses account for about 65% of total expenses.[39]

Similarly, expenses related to depositions account for a significant portion of Class Counsel's expenses (the cost of court reporting and videography services constituting the largest portion).[40] Class Counsel took twenty-four depositions in this case.[41] And, again, they shared these costs with the other plaintiff groups to minimize expense to the class.

Class Counsel reviewed the expenses paid by the litigation fund and (as described in the Johnson Declaration) retained the accounting firm of Robert A. Zagrodny, CPA to review the documentation of all itemized held expenses for which Class Counsel seek reimbursement. Class Counsel withdrew some expenses in response to the CPA's audit.

Class Counsel also incurred expenses related to Class Counsel's share of a document management database.[42] This expense was necessary for the hosting of over seven million pages of documents produced by parties and non-parties in this action. Again, the sharing of a single

---

[39] *See* Johnson Decl. ¶ 47; *id.* at Exs. A–K (apportioning held expert costs). While Class Counsel took the lead in working with most of the experts before settlement, virtually of the experts were shared with the proposed end payer class and/or the retailer plaintiffs. For absolute clarity: for all categories of expenses, Class Counsel only seeks reimbursement of the expenses actually paid/incurred by Class Counsel.

[40] *See* Johnson Decl. ¶ 47; *id.* at Exs. A–K (apportioning held deposition costs).

[41] *See* Johnson Decl. ¶ 18 (twelve Allergan witness depositions); *id.* ¶ 19 (eight generic depositions); *id.* ¶ 30 (four expert depositions).

[42] *See* Johnson Decl. ¶ 47.

database by all plaintiffs groups minimized this necessary expense for the direct purchasers. A

breakdown of the common expenses incurred, by category, is set forth in the Johnson

Declaration, and each individual firm reported cumulative expenses by category in their

respective declarations.[43]

## B.   Class Counsel seeks reasonable compensation for creating a substantial common fund for the class.

Fee awards encourage the prosecution of private antitrust actions—litigation the Supreme

Court recognizes as necessary to ensure compliance with and enforcement of the antitrust laws.[44]

Attorneys who create a common fund pursuing such litigation are eligible for compensation.[45]

In the Second Circuit, district courts have discretion to apply either the lodestar method

or the percentage-of-recovery method to calculate a reasonable fee.[46] The Second Circuit favors

the latter because the percentage method "directly aligns the interests of the class and its counsel

and provides a powerful incentive for the efficient prosecution and early resolution of

litigation."[47] It also "spares the court and the parties the 'cumbersome, enervating, and often

---

[43] Johnson Decl. ¶ 47; *id.* at Exs. A–K.

[44] *See, e.g., The Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This Court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) (noting that private challenges to antitrust violations provide "a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations"); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972) (noting that Congress created rights for private citizens to enforce the antitrust laws, and Rule 23 provides for class actions that may "enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture"); *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 318-19 (1965) (asserting the broad aim of the enactment of the Clayton Act permitting private enforcement of the Sherman Antitrust Act is to "use 'private self-interest as a means of enforcement' of the antitrust laws" (quoting *Bruce's Juices, Inc. v. Am. Can Co.*, 330 U.S. 743, 751 (1947))).

[45] *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

[46] *City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17, 18 (2d Cir. 2020); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

[47] *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 121 (2d Cir. 2005) (quoting *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014); *In re Vitamin C Antitrust Litig.*, No. 06-md-1738, 2012 WL

surrealistic process of lodestar computation.'"[48]

Here, Class Counsel seek a one-third fee, net of litigation expenses, in the amount of $16,433,788.32.

### 1.   Class Counsel's requested one-third fee is fair and reasonable.

In the Second Circuit, to determine whether a fee request is reasonable, courts consider the *Goldberger* factors: (a) the time and labor expended by counsel; (b) the magnitude and complexity of the litigation; (c) the risk of the litigation; (d) the quality of the representation; (e) the requested fee in relation to the recovery under the settlement; and (f) public policy.[49] Based on these factors, courts within this circuit regularly grant one-third fee awards.[50] Here, all six factors support Class Counsel's one-third fee request (net of expenses) for the successful prosecution of this complex pharmaceutical class action.

### a.   Class Counsel devoted substantial time and labor to this litigation.

Class Counsel devoted substantial time to developing and prosecuting the class's claims.

---

5289514, at *9 (E.D.N.Y. Oct. 23, 2012).

[48] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2011 WL 2909162, at *5 (E.D.N.Y. July 15, 2011) (quoting *Goldberger*, 209 F. 3d at 50).

[49] *City of Birmingham Ret. & Relief Sys.*, 806 F. App'x at 18 (citing *Goldberger*, 209 F. 3d at 50).

[50] *See, e.g., In re U.S. Foodservice, Inc. Pricing Litig.*, No. 07-md-1894, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (finding a one third fee award—$99 million—to be "fair and reasonable"); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *12-13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding fees of 33% in complex litigation); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183-87 (W.D.N.Y. 2011) (awarding 33% in fees after several years of high-risk class action litigation); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146-47 (S.D.N.Y. 2010) (awarding fees of 33% of $35 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (awarding 33%—$170 million—in fees in complex, high-risk, multi-year case); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *8-9 (S.D.N.Y. June 7, 2005) (awarding fees of 33% of settlement after three years of litigation); *Strougo* ex rel. *Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding fees of 33% of settlement after six years of complex litigation); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370-73 (S.D.N.Y 2002) (awarding fees of 33% of settlement after two years of complex litigation); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (granting a one-third fee and describing it as "well-earned"); *Klein* ex rel. *Ira v. PDG Remediation, Inc.*, No. 95-cv-4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) (granting a 33% fee); *In re Med. X–Ray Film Antitrust Litig.*, No. 93-cv-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (granting a 33 1/3% fee); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (granting a 33.8% fee).

Before filing, Class Counsel spent collectively about 350 hours investigating Allergan's conduct and drafting the antitrust complaint. While there had been some press about Allergan's "renting" its patents to a Native American Tribe (based on argument raised in a patent infringement suit), this was not, e.g., an instance where a private antitrust suit piggy-backed on the heels of a Federal Trade Commission investigation or antitrust litigation brought by state attorneys general.[51]

After filing, Class Counsel expended thousands of hours reviewing millions of pages of documents, taking twenty-two depositions, and working with eleven experts to understand the complex scientific, regulatory, and economic aspects of the case. Class Counsel are experienced litigators in the field of pharmaceutical antitrust litigation. Nonetheless, the present action required them to develop expertise in new subject matter, including the manufacturing and formulation processes for ophthalmic emulsions, the role of pharmacokinetic data and other scientific studies in approving dry eye treatments, statistical analyses of dry-eye clinical trial data, the relatively new FDA regulatory guidance for performing bioequivalence tests for ophthalmic emulsions using *in vitro* parameters, the FDA's interpretation of the statutes and regulations governing citizen petitions following substantial statutory changes in 2007, the clinical meaning of various dry-eye test results, and the consequences of class members entering into distribution service agreements that contained arguably applicable arbitration, anti-assignment, and anti-class/aggregated recovery clauses.

Throughout this case, Class Counsel fought vigorously against Allergan's efforts to eliminate the direct purchasers' ability to recover, both at the 12(b)(6) stage and during a hotly

---

[51] The patent infringement suit did not involve antitrust allegations, discussion of serial citizen petitions submitted to FDA, or a determination one way or the other as to whether Allergan had committed patent fraud.

contested class certification battle. Class Counsel had to fend off Allergan's many attempts to attack the class—both through challenges to the class representatives on individual (and personal) grounds and attempts to compel arbitration after a year-and-a-half of litigation. In short, "This was not a case where, after the filing of the Consolidated Class Action complaint, the parties immediately turned to settlement discussions. It was a hard-fought, complicated case, requiring extensive work on the part of Lead Counsel."[52]

The amount of time and energy Class Counsel spent developing the factual and legal issues in this case renders their requested one-third fee (net of expenses) reasonable. Class Counsel had every incentive to work efficiently in light of the risk of non-recovery. Furthermore, the time Class Counsel spent on this litigation is not surprising given Allergan's aggressive defenses, the skill of their counsel, the complexity of the issues, and the voluminous record. Class Counsel's tenacity—always under risk of non-recovery—supports the requested fee.[53]

### b.   The magnitude and complexities of this litigation favor the award.

The factual and legal complexity of this case also favors the requested fee award. Pharmaceutical antitrust class actions involve difficult legal issues spanning several areas of law alongside complicated scientific and medical questions, patent and regulatory issues, and antitrust economics;[54] we describe other issues unique to this case above. Class Counsel not only

---

[52] *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 498 (S.D.N.Y. 2017) (citations omitted) (citing *Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012)), *aff'd sub nom. Fresno Cty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63 (2d Cir. 2019); *see also Wal-Mart Stores*, 396 F.3d at 122 ("[A]ntitrust cases, by their nature, are highly complex . . . .").

[53] *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209 (S.D. Fla. 2006) ("Taking on this resource-sapping, risk-based venture also precluded Class Counsel from accepting other contingent matters during the period of representation.").

[54] *See* Johnson Decl. ¶¶ 27, 57; *Vitamin C*, 2012 WL 5289514, at *4 ("'[F]ederal antitrust cases are complicated, lengthy, and bitterly fought[,]' as well as costly." (second alteration in original) (citation omitted) (quoting *Wal-Mart Stores*, 396 F.3d at 118)); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (antitrust cases are "generally complex, expensive and lengthy" (quoting *In re Shopping Carts Antitrust Litig.*, MDL No. 451-CLB, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983)).

had to demonstrate, factually and legally, that Allergan's conduct was anticompetitive and illegal, but also that the direct purchasers overpaid for Restasis because of those violations.

To meet these challenges, Class Counsel worked diligently to marshal the facts and law, successfully defended against a motion to dismiss, mastered a voluminous and challenging documentary record, deposed key witnesses, participated in expert discovery, and briefed and argued a hotly contested challenge to class certification.[55] Discovery encompassed more than seven million pages of documents, twenty-two party and nonparty fact depositions, preparation and service of twenty-two expert reports, six expert depositions (before settlement), and multiple rounds of briefing, all performed over the course of two years.[56] Class Counsel was fully prepared to take the litigation to trial.

### c.   Class Counsel incurred substantial risks in prosecuting this matter.

Courts recognize the risk attorneys and firms assume as a key factor in determining an appropriate fee.[57] Here, Class Counsel incurred substantial risk.

At the time of settlement, the Court had not yet certified the direct purchaser class. Allergan attacked the class as insufficiently numerous—arguing that arbitration and other clauses in the direct purchasers' distribution agreements would nullify many (if not all) of their claims. Yet the class representatives continued to litigate this matter despite a real risk that these arbitration agreements could undermine the class's numerosity and their individual recoveries.

The direct purchasers also assumed significant risk in continuing to litigate this case despite the unavailability of an FDA-approved generic substitute. A little over two years into this litigation, and even as of today, the FDA had still not approved a generic version of Restasis. The

---

[55] *See generally* Johnson Decl. ¶¶ 6–31.

[56] *Id.*

[57] *See Goldberger*, 209 F.3d at 54.

13

FDA's failure to approve a generic Restasis meant that proving causation and damages due to

Allergan's conduct was—while not outright impossible—significantly more complicated than in

a typical generic-delay case (where usually one or more generic products had eventually entered

the market, and the parties are arguing about whether—in the absence of the defendant's alleged

antitrust violation—those generics would have entered earlier). The class representatives and

Class Counsel continued to vigorously pursue this matter despite this significant risk.

Furthermore, any settlement in this case was hardly a foregone conclusion.[58] In recent

years, the Courts have handed down mixed results in pharmaceutical antitrust matters.[59] Class

Counsel's success in achieving a favorable result despite significant hurdles demonstrates the

reasonableness of their fee request.

Finally, as the Second Circuit has recognized:

> [T]he risk associated with a case undertaken on a contingent basis
> is an important factor in determining an appropriate fee award:
> "No one expects a lawyer whose compensation is contingent upon
> his success to charge, when successful, as little as he would charge
> a client who in advance had agreed to pay for his services,
> regardless of success. Nor, particularly in complicated cases
> producing large recoveries, is it just to make a fee depend solely on
> the reasonable amount of time expended."[60]

As a result, courts within this circuit have routinely approved one-third fee awards where "Class

---

[58] *Cf. In re Keyspan Corp. Sec. Litig.*, No. 01-cv-5852, 2005 WL 3093399, at *5-6 (E.D.N.Y. Sept. 30, 2005) (asserting that risk of litigation is low where settlement is virtually assured).

[59] *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34 (1st Cir. 2016) (affirming verdict and entry of judgment for defendants following a six-week jury trial); *In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734 (E.D. Pa. 2015) (granting summary judgment for defendants on grounds, inter alia, that the purchaser plaintiffs could not prove that they had suffered antitrust injury), *aff'd*, 868 F.3d 132 (3d Cir. 2017); *In re Effexor XR Antitrust Litig.*, No. 11-cv-5479, 2014 WL 4988410 (D.N.J. Oct. 6, 2014) (granting in part a motion to dismiss claims), *rev'd sub nom. In re Lipitor Antitrust Litig.*, 868 F.3d 231 (3d Cir. 2017); *In re Lipitor Antitrust Litig.*, No. 12-cv-2389, 2014 WL 4543502 (D.N.J. Sept. 12, 2014) (finding plaintiffs failed to state an antitrust claim against a brand pharmaceutical manufacturer), *rev'd*, 868 F.3d 231 (3d Cir. 2017).

[60] *City of Providence*, 2014 WL 1883494, at *14 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)).

Counsel undertook numerous and significant risks of non-payment in the representation."[61] Here, Class Counsel litigated the case on a contingent basis, undertaking risk of non-payment of their considerable financial outlays on behalf of the class.

> **d. The quality of Class Counsel's representation was critical to the result.**

"[T]he quality of representation is best measured by results . . . ."[62] The results here are clear: Class Counsel's efforts secured a $51.25 million settlement fund for direct purchasers of Restasis who faced a real risk of recovering nothing. Class Counsel's experience and skill enabled the result in this case. Their ability to master a challenging factual, regulatory, and legal landscape and create a compelling liability narrative brought Allergan to the negotiating table— despite the unavailability of a generic Restasis—and ultimately enabled them to obtain a significant settlement for the class.

Class Counsel have been leaders in the field of pharmaceutical antitrust litigation for more than a decade. For the past decade, one or more firms comprising Class Counsel has served as court-appointed lead counsel, co-lead counsel, or a member of the steering committee in almost every generic-delay pharmaceutical antitrust action litigated across the country.[63] This area of law is highly specialized, and successful litigation requires mastery of complex legal, regulatory, scientific, and industry facts implicating patent, antitrust, and food and drug law.[64] As one court observed in a pharmaceutical case involving several of the same attorneys, Class Counsel are "honorable litigators devoted to the interests of their clients" and "among the most experienced lawyers the national bar has to offer in the prosecution . . . of significant class

---

[61] *U.S. Foodservice*, 2014 WL 12862264, at *3.

[62] *Goldberger*, 209 F.3d at 55.

[63] Johnson Decl. ¶ 62.

[64] Johnson Decl. ¶ 61.

actions."[65]

### e.   The requested fee is reasonable in relation to the settlement.

Courts within this circuit have approved one-third fee awards in comparable settlements

of antitrust class actions,[66] as well as in other complex class actions.[67] Courts across the country

have also approved one-third fee awards in at least twenty-five other generic-delay

pharmaceutical antitrust class cases.[68] In the rare instance where Courts have awarded less, those

circumstances differ starkly.[69]

### f.   Public policy considerations support the requested fee.

The requested fee supports well-recognized public policy goals in at least three ways.

First, the requested fee furthers the public policy of "providing lawyers with sufficient incentive

to bring common fund cases that serve the public interest."[70] The Supreme Court has recognized

"the fundamental importance to American democratic capitalism of the antitrust laws" and the

"central role" that private actions play in enforcing this value.[71]

---

[65] *In re Lupron Mktg & Sales Practices Litig.*, No. 01-cv-10861, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005).

[66] *See In re Parking Heaters Antitrust Litig.*, No. 15-mc-940, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019) (recommending that one-third of settlement fund be awarded as attorneys' fees); *In re Mun. Derivatives Antitrust Litig.*, No. 08-cv-02516, 2016 WL 11543257, at *1 (S.D.N.Y. July 8, 2016) (awarding $33 million of $100.5 million settlement fund as attorneys' fees); *In re DDAVP Direct Purchaser Litig.*, No. 05-cv-2237, 2011 WL 12627961, at *4-5 (S.D.N.Y. Nov. 28, 2011) (awarding one-third of $20.25 million settlement fund in pharmaceutical antitrust case as attorneys' fees); Order & Final J. Approving Settlement, *In re Oxycontin Antitrust Litig.*, No. 04-md-1603 (S.D.N.Y. Jan. 25, 2011), ECF No. 360 (awarding 33.5% from a class settlement fund of $16 million); *Med. X-Ray Film*, 1998 WL 661515, at *7 ("Here, the fees sought represent one-third or 33.33% of the [$39.36 million] settlement fund. This request appears reasonable and is well within the range accepted by courts in this circuit.").

[67] *See In re Priceline.com, Inc. Sec. Litig.,* No. 00-cv-1884, 2007 WL 2115592, at *4-5 (D. Conn. July 20, 2007) (awarding 30% of $80 million settlement fund); *In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% of $65.87 million settlement fund).

[68] *See* Johnson Decl. ¶ 74.

[69] *See* Johnson Decl. ¶¶ 75–76.

[70] *Goldberger*, 209 F.3d at 51.

[71] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634-35 (1985); *see also Se. Milk Antitrust Litig.*, No. 07-cv-1000, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) ("Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as

16

Second, this litigation itself furthered "significant societal interest in obtaining redress for prescription drug [purchasers] whose harms could not, given the cost of litigation, be pursued on an individual basis."[72] As addressed in the class certification briefing, the vast majority of class members had negative value claims, such that they would have spent more money litigating individually than they could have hoped to recover if successful.

Third, "the public interest is also served by the defendants' disgorgement of the proceeds of predatory marketplace behavior."[73] Rather than providing a windfall, the requested award encourages the enforcement of the antitrust laws by the highly skilled counsel necessary for that enforcement to be successful.

### 2. The lodestar cross check confirms the reasonableness of Class Counsel's fee request.

The Second Circuit encourages district courts to require "documentation of hours as a 'cross check' on the reasonableness of the requested percentage."[74] "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court," but may be used in conjunction with the Court's own familiarity with the case to assess the reasonableness of the requested fee.[75] To determine a reasonable fee award, courts typically enhance the lodestar by a positive multiplier "to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work."[76]

---

vigorous competition by marketplace competitors.").

[72] *Lupron*, 2005 WL 2006833, at *6.

[73] *Id.*

[74] *Goldberger*, 209 F.3d at 50 (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)).

[75] *Id.* at 50; *Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall.").

[76] *Maley*, 186 F. Supp. 2d at 370.

Class Counsel's total lodestar accumulated up to the date of settlement is $16,655,873.88.[77] Class Counsel calculated this lodestar using their current, customary rates, which are similar to the market rates for lawyers of comparable quality litigating matters of analogous magnitude in New York City.[78] Class Counsel have submitted sworn declarations that explain how time and expenses devoted to this case were tracked and controlled.[79] Interim Lead Counsel has monitored time reporting throughout the litigation. They also retained an independent auditor to review all time reports submitted and provide recommendations. If the Court wishes to review these time reports, Class Counsel are submitting, for *in camera* review, time detail reports for all timekeepers.

As a result, Class Counsel's requested fee of $16,433,788.32 is slightly below their actual lodestar and therefore reasonable in view of the range customarily awarded in similar cases. Here, a one-third fee request (net of expenses) represents 98.67% of Class Counsel's lodestar—a little less than a 1.0 multiplier.[80] Indeed, this multiplier is significantly lower than the multipliers other courts in this circuit have found reasonable.[81] By any measure, the lodestar incurred here offers assurance that the requested fee does not represent a windfall for Class Counsel, but is instead fair compensation for a job well done.

---

[77] Johnson Decl. ¶ 71.

[78] *See, e.g.*, *Laydon v. Mizubo Bank, Ltd.*, Nos. 12-cv-3419, 15-cv-5844, 2017 WL 6372625 (S.D.N.Y. Dec. 12, 2007) (approving requested attorneys' fees of $34.88M); Ex. A to Decl. of Vincent Briganti, *Laydon v. Mizuho Bank, Ltd.*, Nos. 12-cv-3419, 15-cv-5844 (S.D.N.Y. Oct. 31, 2017), ECF No. 817-1 (listing partner rates of $800–$975 and associate rates of $325–$600).

[79] Johnson Decl. Exs. A–K.

[80] Johnson Decl. ¶ 73.

[81] *See In re Credit Default Swaps Antitrust Litig.*, No. 13-md-02476, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (awarding a fee representing a multiplier of "just over 6" in a case that settled prior to class certification); *Wal-Mart Stores*, 396 F.3d at 123 (finding lodestar yielding multiplier of 3.5 to be reasonable); *NASDAQ Market-Makers*, 187 F.R.D. at 489 (observing that "multipliers of between 3 and 4.5 have become common" (quoting *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991))).

Furthermore, Class Counsel retained the Honorable Judge Herndon to perform an independent audit of time detail reports of Class Counsel timekeepers. Judge Herndon served as United States District Judge for the Southern District of Illinois for twenty years until he retired on January 7, 2019.[82] During his tenure on that court, he served as Chief Judge from 2007 to 2014 and, during his last three years, as the Chair of the Judicial Conference Committee on Judicial Security.[83] As a federal judge, Judge Herndon presided over and ruled on "seemingly countless attorney fee and expense petitions governed by the doctrine associated with common benefit funds in state and federal courts."[84]

Judge Herndon reviewed all of Class Counsel's time detail reports—thousands of time entries—to ensure that it was compensable time as described in the Court's Fee Protocol. Judge Herndon also checked that all time entry descriptions were detailed enough for review and that the description and time spent were appropriate.

Following this review, Judge Herndon made recommendations to Class Counsel regarding 745 entries that required either more specificity or otherwise did not comply with the Fee Protocol. Interim Lead Counsel permitted each firm to review its entries and, if warranted, make clarifying amendments or deletions. Following those amendments, Judge Herndon made final recommendations regarding the acceptability of revisions or the striking of entries. Interim Lead Class Counsel accepted all of Judge Herndon's recommendations and struck about 350 entries that either did not conform to the Court's Fees Protocol or were insufficiently detailed.[85]

---

[82] Decl. of Judge David R. Herndon at 2 ("Herndon Decl.") (attached as Ex. L to the Johnson Decl.).

[83] *Id.*

[84] *Id.*

[85] *See* Johnson Decl. ¶ 68. As approved by the Second Circuit, Class Counsel have used their current rates to calculate their lodestar in order to account for inflation and the delay in payment. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d. 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." (citing *Missouri v. Jenkins*, 491 U.S. 274 (1989))); *In re Assicurazioni*

This detailed review ensures the reasonableness of Class Counsel's requested fee.

    **3.    Class Counsel notified the class members of their requested fee award.**

    When deciding whether Class Counsel's requested fees are reasonable, courts within this circuit also weigh whether counsel informed the class of their requested fee award and whether there were any objections to that request. For example, in *U.S. Foodservice*, the court noted that "Class Members were advised in the Notice of Class Action Settlement . . . , which was approved by the Court, that Class Counsel intended to move for an award of attorney's fees of up to one-third of the gross Settlement Fund, plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action."[86] The court concluded that the lack of objection to the requested fee award counseled in favor of its grant.

    On June 12, 2020, claims administrators sent notice of the settlement in this litigation to all direct purchaser class members, each of whom is a sophisticated business entity, received actual notice, and has been involved in similar pharmaceutical antitrust class cases and settlements previously. In that Notice, which the Court approved, Class Counsel informed the class members that "[t]he Court will be asked to approve reimbursement of the litigation expenses that the plaintiffs' Counsel have advanced on behalf of the Class and reasonable fees up to one-third of the net Settlement Fund." To date, no class member has objected to this award or opted-out, but they have until August 3, 2020 to do so.

    **C.    The requested service awards are fair and reasonable.**

    Class Counsel also request that the Court award the five class representatives compensation for their service to the class. "Service awards are common in class action cases

---

*Generali S.p.A. Holocaust Ins. Litig.*, No. 00-cv-9413, 2009 WL 762438, at *4 n.10 (S.D.N.Y. Mar. 24, 2009) ("Courts have upheld use of 'current' rates to compensate for inflation and delay in payment.").

    [86] *U.S. Foodservice*, 2014 WL 12862264, at *3.

and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution

of the litigation, the risks incurred by becoming and continuing as a litigant, and any other

burdens sustained by the plaintiffs."[87] "Courts have consistently found service awards to be an

efficient and productive way to encourage members of a class to become class representatives."[88]

As "a named plaintiff is an essential ingredient of any class action," a service award is an

appropriate means "to encourage or induce an individual to participate in the suit."[89]

　　　Class Counsel request that the Court approve service awards to the class representatives

of $150,000 to each of FWK, RDC, and KPH and $75,000 to Meijer Distribution, Inc. and

Meijer, Inc. together[90] (for a total of $525,000 in service awards). The class representatives in

this case diligently fulfilled their obligations to the class. They stepped forward to assert the

Class's interests by filing suit and undertook the public service of enforcing the nation's antitrust

laws.[91] Without them, the class would not have been awarded this substantial settlement. And

they did so at great risk and cost to their own businesses.

　　　First, the amounts requested are within the acceptable range of payments courts award.[92]

---

[87] *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000))).

[88] *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011); *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000).

[89] *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2004) (quoting *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003)).

[90] Because the Meijer entities joined the litigation at a later stage, Class Counsel only requests one-half the fee award of the other representatives for Meijer.

[91] Johnson Decl. ¶¶ 20, 77–87.

[92] *See, e.g.*, Order & Final J. Approving Settlement at 9, *In re Prograf Antitrust Litig.*, No. 11-md-2242 (D. Mass. May 20, 2015), ECF No. 678 (awarding an aggregate of $400,000 to six class representatives); Final J. & Order of Dismissal Approving Proposed Class Settlement & Dismissing Actions ¶ 31, *In re Neurontin Antitrust Litig.*, No. 02-cv-2731 (D.N.J. Aug. 6, 2014), ECF No. 105 (approving service awards of $100,000 to each class representative); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-cv-83, 2014 WL 2946459, at *4 (E.D. Tenn. June 30, 2014) ($50,000 awarded to each of five named class representatives); *DDAVP*, 2011 WL 12627961, at *5

Second, class representatives FWK, KPH, and RDC faced extremely aggressive, and often personal, attacks from defense counsel throughout this litigation. While Class Counsel maintained throughout that these attacks were unfounded, irrelevant, and all-smoke-but-no-fire, much work was done to counter this onslaught of attacks (as described above). And each class representative was faced with statements made by Allergan's lawyers, in open court, that were, shall we say, less than flattering.[93]

Third, class representatives RDC and Meijer, at minimum, risked potential retaliation from Allergan in filing this lawsuit. As a result, RDC and Meijer took on the risk of leading an action against their own supplier for the benefit of all purchasers.

Fourth, each class representative expended considerable resources litigating this action. As detailed in the Johnson Declaration, each class representative sat for at least one deposition—and some of them two.[94] Some of these deposition lasted multiple days.[95] The class representatives also produced over 200,000 pages of document discovery, opposed multiple motions to compel, and oversaw all decisions by Class Counsel.[96] Finally, two of the class representatives fended off individual attacks on their adequacy as class representatives.[97] Given the unusually personal nature of the attacks, the $150,000 incentive award is appropriate.[98]

---

(granting service awards to three plaintiffs totaling $90,000, or .44% of 20.25 million settlement fund); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-85, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000 each awarded to two named plaintiffs); Order at 2, *Ivax Corp. v. Aztec Peroxides, LLC*, No. 02-cv-593 (D.D.C. Aug. 24, 2005), ECF No. 78 (granting service awards of $100,000 to each class representative in an antitrust price-fixing class action from the $21 million in settlement funds); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each); *In re Revco Sec. Litig.*, No. 89-cv-593, 1992 WL 118800, at *7 (N.D. Ohio May 6, 1992) (awarding $200,000 to a class representative).

[93] Allergan simultaneously maintained that Allergan's alleged bad acts must be kept strictly confidential.

[94] Johnson Decl. ¶¶ 20, 85–86.

[95] *Id*.

[96] Johnson Decl. ¶ 20.

[97] Johnson Decl. ¶¶ 85–86.

[98] *See Vitamin C*, 2012 WL 5289514, at *11 ("The amount of the incentive award is related to the personal risk

Fifth, all of these litigation activities took the class representatives away from their daily businesses, justifying the requested awards.

Finally, Class Counsel informed the class in the Court approved notice that they would seek incentive awards of up to $150,000 for the class representatives; class members have until August 3, 2020 to object.

### D.    Class Counsel should be given authority to distribute attorneys' fees.

Finally, Class Counsel requests that the Court authorize them to distribute any attorneys' fees awarded and costs reimbursed from the settlement. Courts within this circuit routinely allow Class Counsel to undertake such disbursement.[99]

## IV.    CONCLUSION

The direct purchaser class plaintiffs and Class Counsel respectfully ask that the Court approve their application for expense reimbursement, one-third fee request (net of expenses), and service awards to the class representatives.

Dated: July 10, 2020                           Respectfully submitted,

                                               /s/ Kristen A. Johnson
                                               Thomas M. Sobol
                                               David S. Nalven
                                               Kristen A. Johnson
                                               Jessica MacAuley
                                               Hannah W. Brennan
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               55 Cambridge Parkway, Suite 301
                                               Cambridge, Massachusetts 02142
                                               Tel: (617) 482-3700

---

incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." (quoting *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2012 WL 3878825, at *2 (S.D.N.Y. Aug. 22, 2012))).

[99] *See In re Urethane Antitrust Litig.*, No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) ("[T]he Court approves the proposed language giving co-lead counsel the authority to distribute the awarded attorney fees in a fair manner."); *U.S. Foodservice*, 2014 WL 12862264, at *3 ("Lead Class Counsel shall allocate the fees and expenses among all Class Counsel"); *DDAVP*, 2011 WL 12627961, at *5 ("Co-Lead Counsel shall allocate the fees and expenses among all of the Class Counsel.").

Fax: (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
kristenj@hbsslaw.com
jessicam@hbsslaw.com
hannahb@hbsslaw.com

*Interim Lead/Liaison Counsel for the Proposed
Direct Purchaser Class*

Calvin Capshaw
Elizabeth DeRieux
CAPSHAW DeRIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Tel.: (903) 845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Tel.: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

Linda P. Nussbaum
Bart Cohen
Peter Moran
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Tel.: (917) 438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
pmoran@nussbaumpc.com

Paul E. Slater
Joseph M. Vanek
David P. Germaine
John P. Bjork
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
pes@sperling-law.com
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com

John D. Radice
A. Luke Smith
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com
lsmith@radicelawfirm.com

*Counsel for FWK Holdings, LLC, Meijer, Inc., and Meijer Distribution, Inc.
and the Proposed Direct Purchaser Class*

Daniel J. Walker
BERGER MONTAGUE PC

Peter R. Kohn
FARUQI & FARUQI LLP

2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
Tel: (202) 559-9745
Fax: (215) 875-4606
dwalker@bm.net

David F. Sorensen
Ellen Noteware
Zachary Caplan
Nicolas Urban
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net
enoteware@bm.net
zcaplan@bm.net
nurban@bm.net

One Penn Center, Suite 1550
1617 JFK Boulevard
Philadelphia, PA 19103
Tel.: (215) 277-5770
Fax: (215) 277-5771
pkohn@faruqilaw.com

Bradley J. Demuth
Kristyn Fields
FARUQI & FARUQI LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
bdemuth@faruqilaw.com
kfields@faruqilaw.com

Barry Taus
Miles Greaves
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
btaus@tcllaw.com
mgreaves@tcllaw.com

*Counsel for Rochester Drug Co-Operative, Inc. and the Proposed Direct Purchaser Class*

Michael L. Roberts
Debra G. Josephson
Karen S. Halbert
Stephanie E. Smith
ROBERTS LAW FIRM, P.A.
20 Rahling Circle
Little Rock, AR 72223
Tel.: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
debrajosephson@robertslawfirm.us
karenhalbert@robertslawfirm.us
stephaniesmith@robertslawfirm.us

Dianne M. Nast
NASTLAWLLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. and the Proposed Direct
Purchaser Class*

## CERTIFICATE OF SERVICE

I, Kristen A. Johnson, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's CM/ECF system. Those attorneys who are registered CM/ECF users may access these filings and notice of these filings will be sent to those parties by operation of the CM/ECF system.

Dated: July 10, 2020                    /s/ Kristen A. Johnson
                                        Kristen A. Johnson