UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION<br><br>THIS DOCUMENT APPLIES TO: ALL CASES | 18-MD-2819 (NG) (LB)<br><br>MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED |

**GERSHON, United States District Judge:**

Plaintiffs' motion to compel production of documents withheld as privileged raises three separate issues.

First, plaintiffs seek an order directing defendant Allergan, Inc. to produce a September 5, 2017 email (the "September Email")[1] from Michael Shore, counsel for the St. Regis Mohawk Tribe (the "Tribe"), to Allergan's General Counsel, Robert Bailey, and other documents that were shared between Allergan and the Tribe between August 25 and September 8, 2017. Defendant turned over the September Email to plaintiffs, but now asserts that the production was inadvertent and seeks to claw it back under the common interest rule.[2]

---

[1] The September Email consists of two emails. The first was written by Mr. Shore on the evening of September 4, 2017. On the morning of September 5, 2017, Mr. Shore responded to his previous email noting that he had made "one correction" to the September 4th email.

[2] Defendant correctly notes in its opposition that the issue is not whether Allergan, by sharing a privileged document with a third party, has waived its privilege. Because the September Email was sent by counsel for the Tribe to Mr. Bailey, the privilege appears to be the Tribe's and the question to be whether the Tribe's privilege was waived by the communication to Allergan. On this motion, the Tribe itself has taken no position, and the record does not contain affidavits or depositions from the Tribe or its in-house or outside counsel. Nonetheless, both plaintiffs and Allergan assume that Allergan can assert the Tribe's privilege, focusing their briefing on whether the communications between Allergan and the Tribe are subject to the common interest rule. I will do the same.

The background of this dispute is as follows: In August 2017, the Tribe approached Allergan with a proposal to assign the Restasis patents to the Tribe, which would then license them back to Allergan to sell and market Restasis for a fee and annual royalties. The Tribe promised to assert its sovereign immunity in pending *inter partes* review ("IPR") proceedings in an attempt—unsuccessful, as it turns out—to have the IPR proceedings dismissed. After a formal presentation by the Tribe's lawyers on August 14, 2017, Allergan ultimately agreed to the Tribe's proposal, and, on September 8, 2017, Mr. Bailey signed documentation that transferred the patents to the Tribe.

Defendant has produced in discovery correspondence between the Tribe and itself before August 25, 2017. Other than the September Email, it has not produced communications between Allergan and the Tribe after August 25, 2017. On that date, according to Mr. Bailey, he "informed the Tribe's lawyers that Allergan agreed on the material terms of the transaction" that the Tribe had presented to Allergan on August 14. Bailey Decl. ¶ 9. Allergan asserts that, as of August 25, 2017, Allergan and the Tribe shared a common interest in maximizing the success of their transaction to protect the Restasis patents and, as a result, could share privileged information with one another to achieve that goal. Plaintiffs accept that correspondence between Allergan and the Tribe after September 8, 2017 is protected by privilege under the common interest rule, but they argue that the rule did not come into play before then.

I have reviewed Mr. Shore's September Email. I have also reviewed *in camera* the September 4, 2017 email from Dale White, the Tribe's General Counsel, to Mr. Bailey, to which Mr. Shore's email responded.

"While the [attorney-client] privilege is generally waived by voluntary disclosure of the communication to another party, the privilege is not waived by disclosure of communications to a

2

party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). But, as Allergan acknowledges, to shield documents from disclosure under the common interest rule, the parties' communications must further the purpose of the common legal enterprise. *Id.* (citing *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). The burden of showing that the common interest rule applies rests with the party asserting it. *Schwimmer*, 892 F.2d at 244.

For purposes of this motion, I accept that, starting on August 25, 2017, although the Tribe did not yet have legal rights in the patents,[3] Allergan and the Tribe shared a common interest in protecting the patents' validity. The common interest agreement executed by Allergan and the Tribe on September 4, 2017 supports this conclusion. *Cf. United States v. Weissman*, 195 F.3d 96, 99–100 (2d Cir. 1999) (rejecting the common interest rule where no joint strategy was established); *In re Rivastigmine Patent Litig.*, 2005 WL 2319005, at *4–5 (S.D.N.Y. Sept. 22, 2005) (same). The document states that Allergan and the Tribe had agreed to enter into an assignment and licensing program relating to the Restasis patents and that they were working collaboratively to "formaliz[e] their joint and mutual agreement in a manner that best memorializes and implements that agreement in the most accurate and effective legal manner."

However, Allergan has not shown that the emails between Mr. Bailey and counsel for the Tribe were intended to further Allergan and the Tribe's shared interest in protecting the patents. *See In re Rivastigmine*, 2005 WL 2319005, at *4 (where parties share a common interest, "communications as to which they held opposing interests would lose any privilege"). Rather, the emails reveal efforts by the Tribe, first, to achieve consummation of its proposal to transfer the

---

[3] Because Allergan and the Tribe continued to negotiate crucial aspects of the financial deal after August 25, 2017, I do not agree with defendant's claim that the material terms of the transaction had been agreed upon on that date. *See, e.g.*, Bailey Decl. ¶ 9; Bailey Dep. at 209, 212.

3

patents to the Tribe and, second, to achieve the transfer on terms the Tribe preferred. Specifically, in the emails, the Tribe advocated for a different payment structure than originally had been discussed—a large upfront payment rather than a two-stage payment plan, with the timing of the second payment contingent on certain events.

To meet its burden, defendant has offered nothing but conclusory explanations as to how changing the payment structure to require a large upfront payment furthered Allergan and the Tribe's joint interest in the patents' ability to withstand legal challenges. In his declaration, Mr. Bailey said that Mr. White's email to him "reflected [Mr. White's] legal advice about the optimal way to structure the deal from a legal perspective in light of the parties' shared interest in protecting the patents from the IPR proceeding." Bailey Decl. ¶ 14. But the contents of Mr. White's email simply do not support Mr. Bailey's characterization. And Mr. Bailey's deposition testimony does not offer any analysis to buttress the conclusory statement in his declaration. When discussing Mr. White's email, Mr. Bailey testified only about Mr. White's desire to "simplify the payment structure." Bailey Dep. at 96. He did not testify that he, Mr. White, or Mr. Shore was concerned that the payment structure would affect the results of the IPR proceedings. That, in their emails, Mr. Shore and Mr. White also suggested that the financial terms for which the Tribe was advocating would be better for Allergan—a typical negotiation technique—is insufficient to show that their communications were furthering a common purpose. On the contrary, the communications at issue reflect their adverse positions.

In short, Allergan has not met its burden to show that its communications with the Tribe before September 8, 2017 furthered a shared interest. *See Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3–4 (E.D. Tex. May 4, 2011); *Synopsys, Inc. v. Ricoh Co., Ltd*, 2006 WL 2479109, at *2 (N.D. Ca. Aug. 28, 2006). Accordingly, these communications are not subject to

the common interest rule, and plaintiffs' motion to compel communications between defendant and the Tribe between August 25 and September 8, 2017 is granted.

Second, plaintiffs ask that I order Allergan to elect either to produce contemporaneous communications about its intent in entering into the Tribe deal or to forego reliance on evidence regarding this topic. In response, defendant entitled a subsection of its sur-reply at page 9, "No Preclusion Order is Necessary Because Allergan Will Not Rely On Testimony About Its Subjective Motivations For Entering Into The Tribe Deal." This issue will be treated as moot, and Allergan will be held to its election.

Lastly, plaintiffs request production of a document concerning manufacturing standards for Restasis that defendant seeks to claw back. Upon review of the document itself as well as *in camera* review of the email to which it was attached, I am satisfied that the document is protected by the attorney-client privilege and that defendant properly clawed it back.[4]

Dated:  September 1, 2020
        Brooklyn, New York

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

---

[4] Insofar as this decision refers to information that Allergan seeks to seal, Allergan's motion to seal those portions of the motion papers (Dkt No. 472) is denied, as the public's right to understand the basis for my conclusions outweighs Allergan's asserted privacy interests. *See Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).

5