# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | MDL No. 2819<br><br>18-MD-2819 (NG) (LB) |

THIS DOCUMENT APPLIES TO:

**All Direct Purchaser Class Actions:**

*FWK Holdings, LLC v. Allergan, Inc.,* 18-cv-00677 (E.D.N.Y.);

*Rochester Drug Co-Operative, Inc. v. Allergan, Inc.,* 18-cv-00970 (E.D.N.Y.);

*KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., v. Allergan, Inc.*, No. 18-cv-00974 (E.D.N.Y.); and

*Meijer, Inc. and Meijer Distribution, Inc. v. Allergan, Inc.,* 19-cv-02563 (E.D.N.Y).

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, REIMBURSEMENT OF EXPENSES AND AWARD OF ATTORNEYS' FEES AND SERVICE AWARDS, AND ORDER OF DISMISSAL WITH PREJUDICE**

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................................1

II.     SUMMARY OF THE CASE ......................................................................................2

        A.      The direct purchasers independently investigated and filed complaints
                alleging that Allergan violated federal antitrust law and imposed
                overcharges on the class..................................................................................2

        B.      The parties engaged in extensive discovery, motion practice, and arm's-
                length settlement negotiations.........................................................................3

        C.      All class members were sent first-class mail and email notice of the
                settlement. ......................................................................................................4

III.    ARGUMENT .............................................................................................................5

        A.      The Court should certify the proposed direct purchaser class for purposes
                of settlement pursuant to Rule 23. ..................................................................5

        B.      The settlement is fair, reasonable, and adequate and meets the standard for
                final approval. ...............................................................................................11

                1.      The settlement is procedurally fair: the parties, represented by
                        experienced counsel, settled this complex litigation knowing the
                        risks and benefits...............................................................................13

                        a.      This case was factually and legally complex and required
                                class counsel to invest significant resources in a wide range
                                of experts................................................................................13

                        b.      All class members, which are sophisticated business
                                entities, were sent direct mail and email notice, and none
                                objected. ................................................................................14

                        c.      Class counsel, experienced litigators, had a full
                                understanding of the merits and pitfalls of the litigation. ..............15

                        d.      The parties engaged in a good faith, arm's-length
                                negotiation that resulted in a fair and reasonable settlement. ........17

                2.      The settlement is substantively fair: in light of the risks of
                        continued litigation, the settlement provides the direct purchaser
                        class with a definitive, reasonable recovery and treats all class
                        members equitably. ...........................................................................18

a.     Class counsel believe strongly that they could have prevailed at trial, but acknowledge they faced a fierce battle and uncertain outcome. ................................................18

b.     The path to trial would be long and expensive and could include appeals of any class certification decision. ......................19

c.     The settlement falls within the "range of reasonableness" because the damages analysis was contested and class counsel risked an adverse jury finding...........................................20

d.     The ability of Allergan to withstand a greater judgment does not weigh against approval of the settlement. ......................22

e.     The proposed plan of allocation provides an equitable distribution to the class based on volume of purchases. ...............22

f.     The proposed reimbursement of class counsel expenses, payment of attorneys' fees and request for class representative service award are fair and reasonable and should be approved. ...................................................................24

IV.    CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ..............................................8

*Am. Sales Co., LLC v. Pfizer, Inc.* ("*Celebrex*"),
No. 14-cv-361, 2017 WL 3669604 (E.D. Va. July 28, 2017)....................................................7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................................9, 10

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730, 2017 WL 4118967 (D. Mass. Sept. 14, 2017)...........................................10

*Babcock v. C. Tech. Collections, Inc.*,
Nos. 14-cv-3124, 14-cv-3576, 2017 WL1155767 (E.D.N.Y. Mar. 27, 2017).......................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds sub nom.*
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).....................................12, 20

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................................................10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)....................................................................................................8, 9

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)......................................................................................................5

*In re Facebook, Inc, IPO Securities and Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018).....................................................................................22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) .....................................................................................................20

*Gen. Tel. Co. of the S.W. v. Falcon*,
457 U.S. 147 (1982)...................................................................................................................7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................22

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
328 F.R.D. 35 (W.D.N.Y. 2018).......................................................................................*passim*

*Guevoura Fund Ltd. v. Sillerman*,
  No. 15-cv-7192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................................20

*Guippone v. BH S&B Holdings LLC*,
  No. 09-cv-1029, 2019 WL 5811888 (S.D.N.Y. Sept. 23, 2016) .............................................19

*Hall v. ProSource Techs., LLC*,
  No. 14-cv-2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ..............................................5

*In re Holocaust Victim Assets Litig.*,
  105 F. Supp. 2d 139 (E.D.N.Y. 2000) ........................................................................16

*Mariani v. OTG Mgmt., Inc.*,
  No. 16-cv-01751, 2018 WL 10468036 (E.D.N.Y. Sept. 28, 2018) .........................................14

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................................................................21

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15-cv-7488, --- F. Supp. 3d ---, 2020 WL 2749223 (S.D.N.Y. May 27,
  2020) ....................................................................................................11, 12, 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ..........................................................................7, 20

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
  247 F.R.D. 253 (D. Mass. 2008)...............................................................................7

*Parker v. City of New York*,
  No. 15-cv- 6733, 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018)..................................15, 21, 22

*Parker v. City of New York*,
  No. 15-cv-6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017)..............................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05-md-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ..........................12, 14, 21, 22

*In re Payment Card Intercharge Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)...........................................................................11, 13

*In re Relafen Antitrust Litig.*,
  218 F.R.D. 337 (D. Mass. 2003)..............................................................................8

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005)..............................................................................22

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. 03-cv-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..................................................14

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993) ...................................................................................7

*Sesto v. Prospect Chartercare, LLC,*
    No. 18-cv-328, 2019 WL 5067200 (D.R.I. Oct. 9, 2019) ..........................................12

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.,*
    No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ...............................7

*Thompson v. Metro. Life Ins. Co.,*
    216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................12

*Tiro v. Pub. House Invs., LLC,*
    No. 11-cv-7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ..............................15

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) ...................................................................................15

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir.1982) ......................................................................................17

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.,*
    No. 04-cv-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008) ....................................8

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................... *passim*

Minute Entry, *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn. Dec.
    18, 2017), ECF No. 739 .........................................................................................23

Order Approving Form & Manner of Notice & Appointing Notice Administrator,
    *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I. Aug. 14, 2019),
    ECF No. 1200 ........................................................................................................10

Order Granting Final Approval of Pls.' Proposed Plan of Allocation, *In re
    Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503 (D.
    Mass. July 18, 2018), ECF No. 1179 .....................................................................23

Order Granting Final Approval of Settlement, *In re Lidoderm Antitrust Litig.*, No.
    14-md-2521 (N.D. Cal. Sept. 20, 2018), ECF No. 1054 .........................................23

Order, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-
    2503 (D. Mass. Dec. 14, 2017), ECF No. 838 ........................................................10

## I.     INTRODUCTION

The direct purchaser class plaintiffs, FWK Holdings, LLC, Rochester Drug Co-Operative, Inc., KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., Meijer Inc., and Meijer Distribution, Inc., on behalf of a proposed class of direct purchasers, respectfully submit this memorandum in support of their Unopposed Motion for Certification of the Settlement Class, Final Approval of Settlement, Approval of Plan of Allocation, Reimbursement of Expenses and Award of Attorneys' Fees and Service Awards, and Order of Dismissal with Prejudice. The settlement provides a cash benefit to the proposed class in the amount of $51,250,000.00 (less fees, expenses, and service awards to the class representatives). In exchange, the direct purchasers agreed, if the settlement is approved, to dismiss with prejudice their claims against defendant Allergan as fully set forth in the Settlement Agreement.[1]

The settlement class satisfies all elements of Rule 23(a) and (b)(3) and should be certified. The settlement should be approved as it satisfies the requirements of Rule 23(e)(2) and other factors considered by courts in the Second Circuit. Class counsel[2] litigated this action for over two years, completed expert work and discovery, and had a full understanding of the merits and risks of the case. The settlement was reached after extensive negotiations, including an in-person meditation with Magistrate Judge Lois Bloom. The settlement treats each class member fairly and equitably as detailed in the previously submitted plan of allocation.[3] Class members

---

[1] Settlement Agreement, Ex. 1 to the Decl. of Thomas M. Sobol in Support of Direct Purchaser Class Pls' Mot. For Certification of a Class for Purposes of Settlement, Preliminary Approval of Settlement, Approval of the Form and Manner of Notice to the Class, Appointment of Claims Administrator and Escrow Agent, and Setting the Final Settlement Schedule and Date for a Fairness Hr'g (Sobol Decl.), ECF No. 490-1.

[2] "Class counsel" refers to Interim Lead Counsel Hagens Berman Sobol Shapiro LLP along with eight other firms on the executive committee: Faruqi & Faruqi LLP; Berger Montague PC; Taus, Cebulash & Landau, LLP; Radice Law Firm, P.C.; Kaplan Fox & Kilsheimer LLP; Sperling & Slater, P.C.; Capshaw DeRieux, LLP; Nussbaum Law Group, P.C.; Roberts Law Firm, P.A.; and Nastlaw LLC.

[3] Proposed Plan of Allocation, Sobol Decl. Ex. 7, ECF No. 490-7; *see also* Declaration of Jeffrey D. Leitzinger, Ph.D., Sobol Decl. Ex. 8, ECF No. 490-8.

were sent notice by electronic and first-class mail, and no class member has opted-out of the class or objected to the settlement.

Lastly, the request for reimbursement of expenses and the request for attorneys' fees and service awards, as detailed in class counsel's previous submission,[4] should be approved. Class counsel spent over 26,000 hours of attorney and staff time and incurred almost $2 million in out-of-pocket expenses. The class representatives committed time and resources to responding to discovery requests and sitting for depositions (some twice).

## II.   SUMMARY OF THE CASE

Because the facts and procedural history of this action are well known to this Court and were recently explained in great detail,[5] the direct purchasers will only provide a brief recap here.

### A.   The direct purchasers independently investigated and filed complaints alleging that Allergan violated federal antitrust law and imposed overcharges on the class.

The direct purchasers performed an independent investigation and filed the first direct purchaser complaint on November 17, 2017.[6] The complaint set forth the direct purchasers' claims and alleged that Allergan violated the federal antitrust laws by engaging in a scheme to impede and delay market entry of AB-rated, more affordable, generic versions of Allergan's brand-name prescription drug, Restasis. The alleged anticompetitive scheme included patent fraud, a wrongful Orange Book listing, sham patent litigation, sham citizen petitions to the FDA,

---

[4] Direct Purchaser Class Pls.' Mot. for Reimbursement of Expenses, Award of Attorneys' Fees & Service Awards for the Class Representatives and supporting documents, ECF Nos. 516-518.

[5] *See* Decl. of Interim Lead/Liaison Class Counsel Kristen A. Johnson in Support of Class Counsel's Mot. for Reimbursement of Expenses, Award of Attorneys' Fees & Approval of Service Awards to the Class Representatives ("Johnson Decl."), ECF No. 518.

[6] *Id.* ¶ 6.

and a wrongful transfer of patents to a Native American tribe to try to avoid invalidation of those patents.[7]

## B.   The parties engaged in extensive discovery, motion practice, and arm's-length settlement negotiations.

Following the Court's denial of Allergan's motion to dismiss, the parties engaged in substantial discovery. Allergan produced nearly 690,000 documents, totaling over 7 million pages.[8] Non-parties produced an additional 10,511 documents, totaling about 135,000 pages.[9]

Between January 2019 and July 2019, the direct purchasers deposed 14 Allergan witnesses.[10] Allergan, in turn, deposed representatives for the direct purchasers. In fact, Allergan deposed two class representatives—FWK Holdings LLC and Rochester Drug Cooperative—twice each. These second depositions of FWK and RDC mostly dealt with matters outside the factual basis of this litigation, including personal attacks and innuendo.[11]

All parties consulted with economic, scientific, patent, and regulatory experts, each of whom submitted substantial expert reports and rebuttal reports regarding scientific, mathematical, medical, economic, and patent issues. In total, the parties exchanged 36 expert reports.[12]

On September 23, 2019, the parties held a settlement conference before Magistrate Judge Bloom.[13] In preparation for this mediation, the parties submitted lengthy mediation briefs to the

---

[7] *See* Direct Purchaser Class Pls.' First Am. Consol. Class Action Compl. at 1-2, ECF No. 245.

[8] Johnson Decl. ¶ 16.

[9] *Id.* ¶ 17.

[10] *Id.* at ¶ 18. The direct purchasers also took or participated in eight depositions of would-be generic Restasis manufacturers. *Id.* ¶ 19.

[11] *Id.* ¶ 20.

[12] Johnson Decl. ¶¶ 28-30.

[13] Docket Entry by Hon. Lois Bloom, Sept. 24, 2019.

mediator, including exhibits, which described in detail the strengths of the parties' cases and presented a figure for settlement.[14] This conference ended with no resolution.

Following the settlement conference, the direct purchasers and Allergan continued to engage in multiple phone conversations and emails regarding a potential settlement. At an in-person meeting, the parties eventually reached an acceptable resolution.[15] The direct purchasers and Allergan executed the Settlement Agreement on February 16, 2020.[16]

## C. All class members were sent first-class mail and email notice of the settlement.

On May 15, 2020, this Court granted preliminary approval of the settlement.[17] In accordance with the preliminary approval order, the claims administrator RG/2 Claims Administration, LLC ("RG/2") disseminated the approved notice through both U.S. first-class mail and email to potential class members. RG/2 also established a website, www.RestasisAntitrustSettlement.com, which went live on June 11, 2020.[18]

RG/2 sent notice to 43 class members as identified by direct purchasers' expert, Jeffrey J. Leitzinger, Ph.D.[19] RG/2 also served notice on an additional class member, Ahold USA, Inc., at the request of counsel.[20]

---

[14] *Id.* ¶ 33.

[15] *Id.* ¶ 36.

[16] Settlement Agreement, Sobol Decl. Ex. 1, ECF No. 490-1.

[17] Order Granting Prelim. Approval of Settlement Between the Direct Purchaser Class Pls. & Def. & Other Related Relief, ECF No. 507 ("Prelim. Approval Order"). The Preliminary Approval Order held that the Court is "likely" to certify the settlement class, that the settlement is sufficiently fair, reasonable, and adequate, and that the form of notice and method of dissemination satisfy the requirements of Rule 23(e).

[18] Decl. of Tina Chiango Regarding Notice to Direct Purchaser Class ¶ 4 ("Chiango Decl.") (filed herewith).

[19] *Id.* ¶¶ 5-8. This list included the seven retailer entities who are specifically excluded from the class as they have already filed separate actions against Allergan and have settled with Allergan separately.

[20] *Id.* ¶ 6.

The notice[21] was sent by U.S. first-class mail to all 44 identified potential class members on June 12, 2020.[22] RG/2 confirmed delivery to alternate mailing addresses or obtained new addresses for any notice that was returned as undeliverable.[23] On the same date, the notice was also emailed to all 44 potential class members.[24] RG/2 investigated and found new email addresses for some notices that were returned as undeliverable.[25] Since notice was sent, no class member has opted-out of the class,[26] requested exclusion from the settlement, or submitted a notice of intention to appear at the Final Fairness Hearing.[27] In accordance with the preliminary approval order, any such exclusion, objection, or notice to appear was to be postmarked or emailed by August 3, 2020.[28]

## III.    ARGUMENT

### A.    The Court should certify the proposed direct purchaser class for purposes of settlement pursuant to Rule 23.

"Before granting final approval of a class action settlement, courts must consider whether the proposed settlement class . . . satisf[ies] the requirements enumerated in Fed. R. Civ. P. 23."[29]

---

[21] A copy of the notice is attached as Exhibit A to the Chiango Declaration ("Class Settlement Notice").

[22] Chiango Decl. ¶ 8.

[23] *Id.* ¶ 10-11.

[24] *Id.* ¶ 8.

[25] *Id.* ¶ 9.

[26] Other than the seven retailers excluded from the class definition that brought suit and settled separately. While notice was sent to the retailer plaintiffs, because they were explicitly excluded from the class, no formal opt-out was necessary.

[27] *See* Aug. 10, 2020 Letter from Kristen A. Johnson, ECF No. 528; Aug. 14, 2020 Letter from Kristen A. Johnson, ECF No. 531; Chiango Decl ¶ 13.

[28] *See* Prelim. Approval Order ¶¶ 14, 27, 34; Class Settlement Notice at 1, 8-11. The preliminary approval order required all opt-outs, objections, and notices of intention to appear to be postmarked 50 days from June 12, 2020. That date was August 1, 2020, a Saturday; August 3 was the following Monday.

[29] *Hall v. ProSource Techs., LLC*, No. 14-cv-2502, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met.").

Courts have repeatedly certified—both for litigation and settlement—classes of direct purchasers alleging that a name-brand drug maker wrongfully delayed the market entry of generic competitors.[30]

On May 15, 2020, this Court found that it is "likely to certify" the following class:

> All persons who or entities which purchased Restasis in the United States or its territories and possessions directly from Allergan at any time after May 2014 through and including February 16, 2020 (the "Class Period"). Excluded from class are Allergan and its officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.[31]

Also excluded from the class "are the following entities, in their own capacity or as assignees, who have filed separate, but coordinated, actions against Allergan: CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger, Co., Albertsons Companies, Inc., and HEB Grocery Company L.P (collectively, 'Retailer Plaintiffs') and have settled with Allergan separately."[32]

The direct purchasers recently explained at length why the proposed class satisfies the requirements of Rule 23(a), (b)(3), (e), and (g) and why certification of the settlement class is appropriate here.[33] Briefly, the class satisfies Rule 23(a)(1) because it consists of thirty-seven geographically dispersed entities. [34] Widespread geographic dispersion "suggests joinder is

---

[30] *See* Appendix A (listing 12 class certification decisions in connection with settlements and 26 class certification decisions in connection with litigation in pharmaceutical antitrust class actions).

[31] Prelim. Approval Order at 2-3.

[32] *Id.* at 3.

[33] Mem. in Supp. of Direct Purchaser Class Pls.' Mot. for Certification of Class for Purposes of Settlement, Prelim. Approval of Settlement, Approval of the Form & Manner of Notice to the Class, Appointment of Claims Administrator & Escrow Agent & Setting the Final Settlement Schedule and a Date for a Fairness Hearing, ECF No. 489; *see also* Direct Purchaser Class Pls.' Mem. for Class Certification, Apr. 26, 2019.

[34] *See* Ex. 1 to Decl. of Ellen T. Noteware in Support of Direct Purchaser Pls.' Mem. for Class Certification, Apr. 26, 2019 Decl. of Jeffrey J. Leitzinger, Ph.D. at Exs. 5, 6, No. 385-2 ("Leitzinger Class Cert. Decl.") (listing class members and showing their geographic dispersion). Meijer, an additional class representative, was included in the August 14, 2019 Declaration of Dr. Leitzinger, which enumerated 43 class members because his list included the retailer plaintiffs. At the request of counsel, Ahold USA, Inc. was sent notice. Ahold had previously filed a

impracticable, even when putative class members are corporate entities."[35] In addition, the class contains many small wholesalers that lack the resources and claim size to bring a costly antitrust case by themselves.[36]

Second, the class satisfies the commonality requirement of Rule 23(a)(2). Courts have often held in antitrust cases that "the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite."[37] Here, all class members allege overcharge injury due to the same alleged anticompetitive scheme perpetrated by Allergan. There are numerous common issues, easily satisfying Rule 23(a)(2).[38]

Third, the class representatives' claims and defenses are typical of those of absent class members, meeting Rule 23(a)(3)'s typicality requirement.[39] The requirements for typicality are fulfilled when it is shown that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."[40] These claims need not be identical, and "factual differences in the amount of damages, date, size or

---

complaint in this action, but voluntarily withdrew before providing any data or proof of assignment to Dr. Leitzinger.

[35] *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *5 (D. Mass. Oct. 16, 2017); *see also Am. Sales Co., LLC v. Pfizer, Inc.* ("*Celebrex*"), No. 14-cv-361, 2017 WL 3669604, at *10 (E.D. Va. July 28, 2017) ("[T]he class of thirty-two direct purchasers is comprised of companies of varying size, geographically spread across the United States and Puerto Rico. Such geographic dispersion regularly weighs in favor of an impracticability finding." (citation omitted)).

[36] *See Celebrex*, 2017 WL 3669604, at *10 (finding the fact that "the majority of the proposed class members have negative value claims (i.e., the expenses, including expert fees, exceed their possible recovery" to be a factor in favor of certification).

[37] *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3:10 (4th ed. 2002)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement.").

[38] *See* Direct Purchaser Class Pls.' Proposed Trial Plan, ECF No. 385-5 (enumerating these common issues).

[39] *See Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must possess the same interest and suffer the same injury as the class members." (quotation omitted) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

[40] *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class."[41] Here, the class representatives' claims against Allergan—that it impaired generic competition causing class-wide injury and damages in the form of overcharges—result from the same wrongful conduct as the claims of the rest of the class.

Fourth, the class representatives and class counsel both meet the "adequacy" criteria of Rule 23(a)(4). In the Second Circuit, "[d]etermination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"[42]

The class representatives have the same interests as the class because, among other things, "all class members have the right to pursue overcharge damages, they have the same incentive to do so, and there is no conflict among class members allegedly harmed by the same antitrust violation."[43] Likewise, class counsel here are well qualified. Interim lead counsel and class counsel have worked efficiently to prosecute this complicated class action. In fact, Allergan never opposed the direct purchasers' motion for class certification on this ground.[44] As a result, the direct purchasers request, under Rule 23(g), that the Court appoint Hagens Berman Sobol

---

[41] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1175, 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998)), *report and recommendation adopted by*, No. 06-md-1775, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

[42] *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

[43] *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-cv-5525, 2008 WL 1946848, at *6 (E.D. Pa. May 2, 2008); *see In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343 (D. Mass. 2003) ("[Plaintiff] asserts claims typical of those of the class, claiming similar injuries, suffered during the same period and arising from the same conduct.").

[44] *See* Allergan's Mem. in Opp'n to Direct Purchasers Class Pls.' Mot. for Class Certification, ECF No. 386.

Shapiro LLP[45] as Lead Class Counsel and the members of the direct purchasers' Executive Committee[46] as Class Counsel.

Lastly, Rule 23(b)(3) requires that: (1) common questions of law or fact predominate over individual questions and (2) a class action is superior to other available methods of adjudication. The direct purchasers easily satisfy both requirements here.

Antitrust actions such as this one "readily me[e]t" the predominance test.[47] As described fully in the direct purchasers' proposed trial plan, common evidence would be used to establish liability for all claims and defenses including: (1) whether Allergan had monopoly power in the Restasis market, (2) whether Allergan obtained the second wave patents through fraud, (3) whether Allergan's citizen petitions were objectively baseless, (4) whether Allergan prosecuted objective baseless patent litigation, and (5) whether Allergan's conduct caused antitrust injury and damaged direct purchasers.[48]

To prove antitrust damages, the direct purchasers' economic expert, Dr. Leitzinger, identified several types of common evidence that independently and conjunctively support his conclusion that all (or nearly all) class members paid at least some overcharge (assuming generic competition was delayed).[49] This evidence includes academic and government research on generic competition, forecasts from Allergan and generic manufacturers, and actual experience with generic competition involving other ophthalmic drugs. Numerous courts have held similar

---

[45] Thomas M. Sobol and Kristen A. Johnson of Hagens Berman Sobol Shapiro LLP were appointed interim lead/liaison counsel for the proposed direct purchaser class. *See* Order Consolidating Direct Purchaser Class Actions, Appointing Liaison/Lead Counsel & Executive Committee & Appointing Interim Class Counsel Pursuant to 23(g)(3), ECF No. 50; *see also* Prelim. Approval Order ¶ 13.

[46] *See supra* note 2.

[47] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Cordes & Co.*, 502 F.3d at 108.

[48] *See supra* note 35.

[49] Leitzinger Class Cert. Decl. at 10-16.

evidence sufficient to prove antitrust injury on a class-wide basis.[50] To calculate the direct purchasers' aggregate class damages, Dr. Leitzinger relied only on evidence common to the class.[51] As a result, this is not a case where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."[52]

The direct purchaser class also satisfies the "superiority" requirement of Rule 23(b) that ensures that a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[53] As demonstrated above, this case presents numerous common issues and evidence.

As described above, all class members were sent direct notice by First-Class Mail and email of the court's preliminary approval order finding that it was "likely" to certify the proposed settlement class. Because of the COVID-19 pandemic, class members were given a longer than typical time to opt out of the class (50 days).[54] All class members are sophisticated entities in the business of selling pharmaceutical drugs, some of whom have internal legal departments. The complete absence of any request for exclusion counsels heavily in favor of certifying the proposed settlement class.

---

[50] *See supra* note 34.

[51] Leitzinger Class Cert. Decl. at 10-16, ECF No. 385-2.

[52] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

[53] *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment).

[54] *See, e.g.*, Order Approving Form & Manner of Notice & Appointing Notice Administrator ¶ 4, *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I. Aug. 14, 2019), ECF No. 1200 (35 days to request exclusion from class); Order ¶ 6, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503 (D. Mass. Dec. 14, 2017), ECF No. 838 (30 days to request exclusion from class); *In re Asacol Antitrust Litig.*, No. 15-cv-12730, 2017 WL 4118967, at *4 (D. Mass. Sept. 14, 2017) (35 days to request exclusion from class).

**B.     The settlement is fair, reasonable, and adequate and meets the standard for final approval.**

Courts encourage settlement of lawsuits.[55] Public policy favors settlement because "[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time."[56]

Rule 23(e)(2) of the Federal Rules of Civil Procedure, amended in 2018, provides that a court may approve a class action settlement if it is "fair, reasonable, and adequate." The amended Rule 23(e)(2) sets forth the standards and procedures that apply to class action settlements and requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

---

[55] *See In re Payment Card Intercharge Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) ("Courts should remain mindful . . . 'of the strong judicial policy in favor of settlements, particularly in the class action context.'" (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005))); *see also In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488, --- F. Supp. 3d ---, 2020 WL 2749223, at *2 (S.D.N.Y. May 27, 2020) ("The compromise of complex litigation is encouraged by the courts and favored by public policy." (quoting *Wal-Mart*, 396 F.3d at 116-17)).

[56] *Babcock v. C. Tech. Collections, Inc.*, Nos. 14-cv-3124, 14-cv-3576, 2017 WL1155767, at *4 (E.D.N.Y. Mar. 27, 2017) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 761 (1986)).

> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

"Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.' Paragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members.'"[57]

Courts in the Second Circuit apply Rule 23(e)(2)'s considerations "in tandem with" nine factors, known as the *Grinnell* factors, to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."[58]

Courts reviewing settlements recognize that "although '[t]he case law offers "laundry lists of factors" pertaining to reasonableness . . . the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'"[59] Here, the settlement satisfies all Rule 23(e)(2) factors as well as the nine

---

[57] *Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2019 WL 6875472, at *13 (E.D.N.Y. Dec. 16, 2019) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

[58] *Namenda*, 2020 WL 2749223, at *3 (quoting *Christine Asia Co. v. Jack Yun Ma*, No. 15-md-2631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019)). The *Grinnell* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds sub nom. Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

[59] *Sesto v. Prospect Chartercare, LLC*, No. 18-cv-328, 2019 WL 5067200, at *3 (D.R.I. Oct. 9, 2019) (quoting *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015); *see also Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("All nine [*Grinnell*] factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances. (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001))).

*Grinnell* factors.

1. **The settlement is procedurally fair: the parties, represented by experienced counsel, settled this complex litigation knowing the risks and benefits.**

    a. **This case was factually and legally complex and required class counsel to invest significant resources in a wide range of experts.**

The complexity, expense, and duration of this litigation weigh in favor of approving the settlement. Rule 23(e)(2)(C) requires courts to assess whether the relief to the class "is adequate, taking into account . . . the costs, risks, and delay of trial and appeal . . . ." The first *Grinnell* factor asks this Court to consider "the complexity, expense and likely duration of the litigation."[60]

It cannot be disputed that this case was factually and legally complicated. The direct purchasers alleged four grounds of liability: that Allergan had (1) committed fraud against the U.S. Patent and Trademark Office, (2) filed a series of sham citizen petitions, (3) transferred its patent rights in pre-textual transfer to the St. Regis Tribe, and (4) engaged in sham patent litigations against would-be generic competitors.[61] Creating the factual record to prove each of these allegations was time-consuming and complicated. Class counsel engaged eleven experts to proffer detailed opinions.[62] The citizen petitions that Allergan filed alone spanned several hundred pages and attached countless scientific articles that needed to be understood by class counsel and, eventually, a jury.

This action also contained many unique legal challenges, including a relatively new attack on the proposed class representatives involving their distribution service agreements and certain arbitration clauses. Likewise, presenting a damages theory given the lack of a generic

---

[60] *Payment Card*, 330 F.R.D. at 29.

[61] *See* Direct Purchaser Class Pls.' First Am. Consol. Class Action Compl., ECF No. 245.

[62] Johnson Decl. ¶ 28.

Restasis on the market would present real hurdles if the case were to proceed. By contrast, the settlement provides the class with immediate, substantial, and definite relief without the delay, risk, and uncertainty of continued litigation (including summary judgment and trial).

> **b.    All class members, which are sophisticated business entities, were sent direct mail and email notice, and none objected.**

The second *Grinnell* factor gauges "the reaction of the class to the settlement." As detailed in § II.C above, all class members were sent direct mail and email notice, and no class member has objected to the settlement. "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement."[63] The notice gave class members a detailed description of the case, the terms of the settlement, how the funds would be apportioned, their options for requesting exclusion or objecting, and the right to appear before this Court.[64] The lack of opt-outs and objections is particularly salient "where, as here, a class is comprised of sophisticated business entities that can be expected to oppose any settlement they find unreasonable" and "many [c]lass members here have also been members of classes certified in other pharmaceutical antitrust actions." [65]

---

[63] *Payment Card*, 2019 WL 6875472, at *16 (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010)); *see id.* at *17 (approving settlement that included "675 exclusion requests and 176 objections" in part because the numbers were still "relatively small" compared to the over 12 million estimated class members); *see also Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (fact that no class member opted out or objected to the settlement to "weighs 'heavily in favor of the substance fairness of the settlement'" (quoting *In re Sinus Buster Prods. Consumer Litig.*, No. 12-cv-2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014))).

[64] *See* Class Settlement Notice at 5-6, 8-13; *see also Godson*, 328 F.R.D. at 51–52 ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995))).

[65] *In re Remeron Direct Purchaser Antitrust Litig.,* No. 03-cv-0085, 2005 WL 3008808, at *6 (D.N.J. Nov. 9, 2005).

   **c. Class counsel, experienced litigators, had a full understanding of the merits and pitfalls of the litigation.**

  Considered together, the third *Grinnell* factor ("the stage of proceedings and the amount of discovery completed") and Rule 23(e)(2)(A) ("the class representative and class counsel have adequately represented the class") ask the court to examine whether the settlement is adequate based on counsel's understanding of the facts of the case and the experience of counsel. There is no hard line as to when a case has progressed far enough, and a case need not be on the eve of trial for the strengths and weaknesses to be fairly weighed.[66] The test "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."[67] In situations where enough discovery has occurred to provide counsel with "sufficient information to appreciate the merits of the case, then settlement is favored."[68]

  At the time of the settlement, discovery had closed and the direct purchasers had a full understanding of the factual and legal underpinnings of this action. In the course of discovery, the direct purchasers reviewed millions of pages of documents from Allergan and non-parties.[69] The direct purchasers took multiple depositions of Allergan personnel.[70] Both opening and rebuttal expert reports had been served, and the direct purchasers had already deposed Allergan's

---

  [66] *See, e.g.*, *Mariani v. OTG Mgmt., Inc.*, No. 16-cv-01751, 2018 WL 10468036, at *6 (E.D.N.Y. Sept. 28, 2018) (holding that the parties had engaged in adequate discovery even though the case settled before fact discovery had been completed and before the plaintiffs moved for class certification); *Parker v. City of New York*, No. 15-cv-6733, 2018 WL 6338775, at *3 (E.D.N.Y. Dec. 4, 2018) (approving settlement before the plaintiffs filed for class certification and after conducting some but before the completion of discovery).

  [67] *Godson*, 328 F.R.D. at 55–56 (quoting *Sinus Buster*, 2014 WL 5819921, at *9).

  [68] *Parker v. City of New York*, No. 15-cv-6733, 2017 WL 6375736, at *6 (E.D.N.Y. Dec. 11, 2017); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *Tiro v. Pub. House Invs., LLC*, No. 11-cv-7679, 2013 WL 4830949, at *7 (S.D.N.Y. Sept. 10, 2013).

  [69] Johnson Decl. ¶¶ 16-17.

  [70] *Id.* ¶ 18.

experts.[71] The direct purchasers had spent many months briefing class certification and had appeared in two hearings regarding the same.

Given all the above, the direct purchasers knew the strengths and weaknesses of their case and were able to make an informed decision to settle. The direct purchasers had mastered the intricate science underlying the Restasis patents and the alleged misrepresentations made by Allergan to the PTO. Through analysis, deposition testimony, and expert opinion, the direct purchasers had disentangled a citizen petition record that spanned thousands of pages and were prepared to show how the citizen petitions had delayed the entry of a generic Restasis. But the direct purchasers also knew the uphill battles they faced at summary judgment and trial. Chief among these was the lack of an FDA-approved generic Restasis. While the direct purchasers continue to believe in the merits of the case, ultimate success was no certainty.

Not only did the direct purchasers have a fulsome understanding of the strengths and weaknesses of this case, but class counsel have over 20 years of experience litigating pharmaceutical antitrust class actions on behalf of direct purchasers.[72] "Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."[73] Class counsel's vast experience litigating, trying, and settling similar class actions weighs in favor of finding the settlement fair. Additionally, the class representatives adequately represented the class, sitting for repeated depositions and producing documents.

---

[71] Johnson Decl. ¶¶ 28-30. The direct purchasers did not find it necessary to depose all of Allergan's experts.

[72] Johnson Decl. ¶¶ 61-64.

[73] *Godson*, 328 F.R.D. at 53 (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012)).

### d.    The parties engaged in a good faith, arm's-length negotiation that resulted in a fair and reasonable settlement.

Settlements that are the product of bona fide negotiations are entitled to "a strong initial presumption of fairness."[74] Here, the direct purchasers engaged in over five months of serious negotiations with counsel for Allergan that resulted in the settlement. The parties had two conferences with Honorable Magistrate Judge Lois Bloom after being referred by this Court.[75] At the first conference, in August of 2019, Magistrate Judge Bloom ordered the parties to submit substantial mediation briefs, including exhibits and written demands. The parties then attended an all-day, in-person settlement conference with Magistrate Judge Bloom that did not lead to resolution, but clarified the key areas of dispute.[76] The parties continued to negotiate and held another in-person meeting in January of 2020, where they were able to come to agreement and execute a binding term sheet.[77]

The negotiations here—where each side presented factual and legal arguments and was aided by a mediator—are presumptively fair. Class counsel, who are experienced in litigating and negotiating complex antitrust actions, reached terms after advocating strongly for the class. There is no indication of collusion by the parties, and the lack of objection to the settlement is further indication that the negotiations were fairly conducted.

As described above, the settlement is procedurally fair and should be approved.

---

[74] *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 146 (E.D.N.Y. 2000) (quoting *NASDAQ Mkt.-Makers*, 187 F.R.D. at 474); *Weinberger v. Kendrick*, 698 F.2d 61, 73, 74 (2d Cir.1982) (listing "the absence of any indication of collusion, the protracted settlement negotiations, [and] the ability and experience of plaintiffs' counsel" as "important indicia of the propriety of settlement negotiations").

[75] Johnson Decl. ¶ 32.

[76] *Id.* ¶¶ 33-34.

[77] *Id.* ¶¶ 35-36.

2.    **The settlement is substantively fair: in light of the risks of continued litigation, the settlement provides the direct purchaser class with a definitive, reasonable recovery and treats all class members equitably.**

a.    **Class counsel believe strongly that they could have prevailed at trial, but acknowledge they faced a fierce battle and uncertain outcome.**

The fourth ("the risks of establishing liability") and fifth ("the risks of establishing damages") *Grinnell* factors are frequently considered together when analyzing the fairness of a settlement. Likewise, Rule 23(e)(C)(i) requires the court to consider "the costs, risks, and delay of trial and appeal." A court analyzing a settlement under these factors does not have to "decide the merits of the case or resolve unsettled legal questions" but, instead, "need only assess the risks of litigation against the certainty of recovery under the proposed settlement."[78]

The direct purchasers maintain that their proof of liability for generic delay is strong. The direct purchasers had developed a fulsome record (through documents, deposition testimony, and expert opinion) that showed Allergan intentionally submitted fraudulent declarations to the PTO and citizen petitions to the FDA that (at least for some definable period of time) delayed generic Restasis from coming to market. Yet one critical question loomed over the proceedings: Why is there still no generic Restasis? To succeed at a trial, the direct purchasers would need to convince a jury that it was Allergan's conduct that has prevented a generic Restasis from entering the market. But the patents at issue in the case are either expired or invalidated and the last Allergan citizen petition was rejected several years ago. Allergan may have been successful in convincing a jury that it was not Allergan that caused the delay, but some internal struggle at the FDA (or that the petition itself was meritorious and that is why there is still no approved product).

---

[78] *Godson*, 328 F.R.D. at 56 (quoting *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121-22 (E.D.N.Y. 2006); *AOL v. Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006)).

The lack of an approved generic also made damages difficult to estimate. The direct purchasers' expert economist, Dr. Leitzinger, analyzed several possible scenarios for estimating damages that included different generic Restasis launch dates and possible competitors. These models projected single-damages across a range, from hundreds of millions of dollars into the billions. But Allergan's expert challenged Dr. Leitzinger's methodology and estimates, opining that damages were, at most, only a few million dollars (assuming liability and causation could be proven). Hence, even if the direct purchasers won on liability, their ultimate recovery could have been very low or non-existent.

The proposed settlement accounts for these serious risks and provides a fair and adequate recovery for the class.

> **b.  The path to trial would be long and expensive and could include appeals of any class certification decision.**

The sixth *Grinnell* factor examines the "risks of maintaining the class action through trial" and, here, counsels toward supporting the settlement. At the time the binding term sheet was signed, the direct purchasers had already spent nearly $2 million for expenses and had dedicated over 26,000 hours in attorney and staff time.[79] Continuing the litigation through summary judgment and trial would require a massive amount of additional attorney time and expense.

And, while class certification had been briefed and argued, it had not been decided at the time of the settlement. "The risk of maintaining a class through trial is present in any class action."[80] When a class has not yet been certified, there is an "appreciable risk" that the absent

---

[79] Johnson Decl. ¶¶ 41, 73.

[80] *Guippone v. BH S&B Holdings LLC,* No. 09-cv-1029, 2019 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016) (citing *Asare v. Change Grp. of N.Y., Inc.,* No. 12-cv-3371, 2013 WL 6144764 at *12 (S.D.N.Y. Nov. 18, 2013)).

class members would recover nothing. [81] And even if the class here were certified, the risk of appeal would remain. Allergan posited that arbitration clauses in agreements to distribute Allergan's products meant that those members could not remain in the class and, therefore, the class was not numerous enough to certify. The direct purchasers briefed this issue, arguing that the *Restasis* litigation had been pending before those agreements had been signed, that the agreements did not relate to antitrust matters, and that Allergan was treating class members differently in order to manufacture typicality concerns. Class counsel was confident in their arguments and believed a class would be certified, but, even if it was, Allergan could have filed a 23(f) petition that, if accepted, could have drawn out the litigation calendar and delayed trial.

        c.    **The settlement falls within the "range of reasonableness" because the damages analysis was contested and class counsel risked an adverse jury finding.**

Courts typically evaluate the *Grinnell* factors eight and nine together.[82] These factors consider the range of reasonableness in light of: (i) the best possible recovery and (ii) litigation risks. In analyzing these factors, the issue for the Court is not whether the settlement represents the best conceivable recovery, but how the settlement relates to the strengths and weaknesses of the case.[83] A court should "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes

---

    [81] *Godson*, 328 F.R.D. at 57 (quoting *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004)); *see also NASDAQ Mkt.-Makers*, 176 F.R.D. at 476–77 ("[I]f the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all.").

    [82] *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-7192, 2019 WL 6889901, at *9 n.1 (S.D.N.Y. Dec. 18, 2019) ("Courts typically collapse into this inquiry the final two *Grinnell* factors: 'the range of reasonableness of the settlement fund in light of the best possible recovery' and 'the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" (quoting *Grinnell*, 495 F.2d at 463)).

    [83] *Grinnell*, 495 F.2d at 462.

in exchange for certainty and resolution."[84]

"The range of reasonableness 'is a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"[85] And while there is no hard calculation for determining an adequate amount, courts acknowledge that even a settlement "amount[ing] to a hundredth or even a thousandth part of a single percent of the potential recovery" can be adequate when weighed against the risks of continued litigation.[86]

In the antitrust context, plaintiffs are permitted to present a jury with a variety of options on how long the delay in generic competition could be and how much that delay caused direct purchasers to pay in overcharges. Here, a realistic assessment of damages assuming a single delayed entrant (at the time of the negotiated settlement), excluding purchases assigned to the retailer plaintiffs, could be between $255 million for 12 months of delay and $709 million for 18 months of delay. But, as described above, a generic still has not been approved, and so performing any concrete calculation is difficult because the input (how much delay did Allergan's conduct cause) is quite challenging. Using the above estimates, which do not take into account the many risks of going forward, the settlement is approximately between 5% and 20% of the direct purchasers' estimated damages. Where, as here, the "proposed settlement provides a

---

[84] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

[85] *Payment Card*, 2019 WL 6875472, at *28 (quoting *Wal-Mart*, 396 F.3d at 119) (approving settlement amount even though it accounted for around 2.5% of the larges possible damage estimate); *see also Parker*, 2018 WL 6338775, at *7 (approving a settlement equal to $175 per day for class members held in solitary confinement even though the Court acknowledged the jury may have awarded the plaintiffs more).

[86] *Payment Card*, 2019 WL 6875472, at *29 (quoting *Grinnell*, 495 F.2d at 455 n.2).

meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable."[87]

### d. The ability of Allergan to withstand a greater judgment does not weigh against approval of the settlement.

Courts in this district have also found that, just because a defendant can withstand a greater judgment—the seventh *Grinnell* factor—"this alone should not preclude the Court from finding that the settlement is fair."[88] The direct purchasers do not dispute that Allergan, a large pharmaceutical company, could likely satisfy a greater judgement. But it is less certain whether continued litigation would have provided a better outcome for the class. This consideration is "largely neutral," as this is a defendant "with classic deep pockets."[89]

### e. The proposed plan of allocation provides an equitable distribution to the class based on volume of purchases.

Rule 23(e)(2)(D) asks the Court to consider whether the settlement "treats class members equitably relative to each other," and Rule 23(e)(2)(C)(ii) asks whether "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims" is adequate. To be approved, a plan of allocation does not need to have pinpoint precision, but "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."[90] The direct purchasers' proposed plan of allocation

---

[87] *See MetLife*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

[88] *Parker*, 2018 WL 6338775, at *6 (finding the factor "neutral" as to whether or not to approve the settlement).

[89] *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005)).

[90] *Payment Card*, 2019 WL 6875472, at *20 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("Thus, 'in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.'" (quoting *EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007))); *In re Facebook, Inc, IPO Securities and Derivative Litig.*, 343 F. Supp. 3d 394, 414-15 (S.D.N.Y. 2018) (finding fact that a plan of allocation was "prepared by experienced counsel along with a damages expert" were "both indicia of reasonableness").

distributes the funds on a "*pro rata*"[91] basis and is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency.[92] It should be approved here as well.

As described in the Notice and proposed plan of allocation, the direct purchasers' economist, Dr. Leitzinger, will calculate each class member's *pro rata* share based on units purchased as reflected in sales data produced by Allergan from June 1, 2014 through March 31, 2019.[93] This period is 10 months shorter than the end of the proposed class period, which was negotiated between class counsel and counsel for Allergan. This share may be adjusted to reflect any assignments.[94] Class members will receive pre-populated claim forms that they may agree to or dispute based on their own records of purchases from June 1, 2014 through March 31, 2019. The settlement funds will then be allocated based on each class member's percentage share of the class's total purchase volume across all that timely submit valid claim forms.[95]

In a letter on April 24, 2020, this Court advised counsel of concerns "that if any class members exist who made purchases only between April 1, 2019 and February 16, 2020, they may be materially disadvantaged by the plan."[96] To address these concerns, counsel for Allergan certified on May 11, 2020 that "there are no DPP class members that made Restasis® purchases

---

[91] *Payment Card*, 2019 WL 6875472, at *20 ("Courts frequently approve plans involving *pro rata* distribution." (citing cases)).

[92] *See, e.g.*, *Namenda*, 2020 WL 2749223, at *7-8 (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); Order Granting Final Approval of Settlement ¶ 9, *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal. Sept. 20, 2018), ECF No. 1054 (same); Order Granting Final Approval of Pls.' Proposed Plan of Allocation, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503 (D. Mass. July 18, 2018), ECF No. 1179 (same); Minute Entry, *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn. Dec. 18, 2017), ECF No. 739 (same); *see also* Leitzinger Allocation Decl. ¶¶ 4, 8.

[93] Plan of Allocation § 2.1 (as measured in units of a 30-day supply either vials or MultiDose).

[94] *Id.*

[95] *Id.*

[96] ECF No. 500.

between April 1, 2019 and February 16, 2020 and were not already identified as part of the DPP class due to purchases earlier in the class period."[97]

First, the proposed plan of allocation is simpler than other generic delay antitrust cases that must also account for generic purchases.[98] Second, the calculation is based on actual sales data produced by the defendants to determine *pro rata* percentages. Third, given that there are no class members that purchased only after April 1, 2019, the nearly 5 years (i.e., 85% of the total class period) of existing data allows for a fair allocation of the settlement by purchases.[99]

Finally, and most importantly, no class member has objected to the proposed plan of allocation. The settlement notice referenced the plan of allocation, and class members had access to it via the settlement website.[100] The notice gave class members more detail than is typical in these cases and explained that their *pro rata* share will be based on Allergan sales data ranging June 1, 2014 through March 31, 2019. The class, sophisticated business entities with access to legal counsel, did not object. This allocation is reasonable and treats class members equitably.

> **f.    The proposed reimbursement of class counsel expenses, payment of attorneys' fees and request for class representative service award are fair and reasonable and should be approved.**

On July 10, 2020, class counsel filed Direct Purchaser Class Plaintiffs' Motion for Reimbursement of Expenses, An Award of Attorneys' Fees, and Service Awards for the Class Representative with supporting documentation.[101] For the reasons stated in those papers, the

---

[97] ECF No. 503-3 ¶ 8

[98] *See also* Leitzinger Report at n.8 "no weighting of purchases between Restasis single-use vials and Restasis MultiDose bottle is required because, according to data produced in this litigation, the average overcharge associated with each is the same.").

[99] As noted by Dr. Leitzinger, "[b]ased on…[a] review of purchase patents by Class members, I do not believe that the absence of Allergan data after March of 2019 materially affects the resulting allocations."Letizinger Rpt. at n.7

[100] Class Settlement Notice at 7.

[101] ECF Nos. 516-518.

direct purchasers' request satisfies Rule 23(e)(2)(C)(iii). In addition, class counsel's request has been published on the website www.RestasisAntitrustLitigation. No class member has objected to class counsel's request. Accordingly, the direct purchasers ask that the Court approve the following payments from the settlement fund:

1. Class Counsel's request for reimbursement of their reasonable litigation expenses, totaling $1,948,635.05;

2. A fee award of one-third of the net Settlement amount (one-third of $51.25 million settlement minus the requested litigation expenses), totaling $16,433,788.32, plus interest on that amount that may accrue prior to distribution; and

3. Service awards of $150,000 to each of Direct Purchaser Class Plaintiffs FWK Holdings, LLC, Rochester Drug Co-Operative, Inc., and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. and a service award of $75,000 to Direct Purchaser Class Plaintiffs Meijer, Inc. and Meijer Distribution, Inc., for a total of $525,000, in recognition of their participation in this case and the time and effort they expended on behalf of the Class.

## IV.   CONCLUSION

For the reasons detailed above, and as set forth in the proposed order submitted herewith, the direct purchasers respectfully request that the Court (1) enter an order certifying the direct purchaser class, as defined, for the purposes of settlement, (2) enter an order granting final approval of the direct purchaser class settlement, entering final judgment and dismissing all claims against Allergan with prejudice, (3) issue an order approving the proposed plan of allocation for the direct purchaser class, and (4) grant class counsel's request for reimbursement of expenses, award of attorneys' fees, and service awards for the class representatives.

Dated: September 15, 2020

Respectfully submitted,

/s/ Thomas M. Sobol
Thomas M. Sobol
David S. Nalven
Kristen A. Johnson
Jessica MacAuley
Hannah W. Brennan
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, Massachusetts 02142
Tel: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
kristenj@hbsslaw.com
jessicam@hbsslaw.com
hannahb@hbsslaw.com

*Interim Lead Counsel for the Proposed Direct Purchaser Class*

Calvin Capshaw
Elizabeth DeRieux
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Tel.: (903) 845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Tel.: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com
wc
Linda P. Nussbaum
Bart Cohen
Peter Moran
NUSSBAUM LAW GROUP, P.C.

Paul E. Slater
Joseph M. Vanek
David P. Germaine
John P. Bjork
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
pes@sperling-law.com
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com

John D. Radice
A. Luke Smith
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com
lsmith@radicelawfirm.com

1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Tel.: (917) 438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
pmoran@nussbaumpc.com

*Counsel for FWK Holdings, LLC, Meijer, Inc., and Meijer Distribution, Inc.*
*and the Proposed Direct Purchaser Class*

Daniel J. Walker
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
Tel: (202) 559-9745
Fax: (215) 875-4606
dwalker@bm.net

David F. Sorensen
Ellen Noteware
Zachary Caplan
Nicolas Urban
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net
enoteware@bm.net
zcaplan@bm.net
nurban@bm.net

Peter R. Kohn
FARUQI & FARUQI LLP
One Penn Center, Suite 1550
1617 JFK Boulevard
Philadelphia, PA 19103
Tel.: (215) 277-5770
Fax: (215) 277-5771
pkohn@faruqilaw.com

Bradley J. Demuth
Kristyn Fields
FARUQI & FARUQI LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
bdemuth@faruqilaw.com
kfields@faruqilaw.com

Barry Taus
Miles Greaves
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
btaus@tcllaw.com
mgreaves@tcllaw.com

*Counsel for Rochester Drug Co-Operative, Inc. and the Proposed Direct Purchaser Class*

Michael L. Roberts
Debra G. Josephson
Karen S. Halbert
Stephanie E. Smith
ROBERTS LAW FIRM, P.A

Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300

20 Rahling Circle
Little Rock, AR 72223
Tel.: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
debrajosephson@robertslawfirm.us
karenhalbert@robertslawfirm.us
stephaniesmith@robertslawfirm.us

Fax: (215) 923-9302
dnast@nastlaw.com

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. and the Proposed Direct Purchaser Class*

# APPENDIX A

### A.   Settlement Classes Certified in Pharmaceutical Antitrust Class Actions

1.   *In re Aggrenox Antitrust Litig.*, No. 14-md-2516, 2017 WL 4278788 (D. Conn. Sept. 19, 2017).

2.   *In re Asacol Antitrust Litig.*, No. 15-cv-12730, 2017 WL 4118967 (D. Mass. Sept. 14, 2017).

3.   *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2014 WL 8335997 (E.D. Mich. Oct. 2, 2014).

4.   *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014).

5.   *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.* ("*Doryx*"), No. 12-cv-3824, 2014 WL 631031 (E.D. Pa. Feb. 18, 2014).

6.   *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.* ("*Miralax*"), No. 07-cv-142, 2012 WL 12910047 (D. Del. Feb. 6, 2012).

7.   *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.* ("*Toprol*"), No. 06-cv-052, 2011 WL 13097266 (D. Del. Nov. 16, 2011).

8.   *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-cv-2237, 2011 WL 13318188 (S.D.N.Y. Aug. 16, 2011).

9.   *In re OxyContin Antitrust Litig.*, MDL No. 1603, 2010 WL 11493630 (S.D.N.Y. Sept. 27, 2010).

10.   *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, No. 04-mc-535 (D.D.C. Jan. 9, 2006), ECF No. 24.

11.   *In re Remeron Direct Purchaser Antitrust Litig.*, No 03-cv-0085 (D.N.J. Aug. 30, 2005), ECF No. 181.

12.   *North Shore Hematology and Oncology Assoc.*, No. 04-cv-00248 (D.D.C. Sept. 10, 2004), ECF No. 21.

### B.   Litigation Classes Certified in Pharmaceutical Antitrust Class Actions

1.   *In re Glumetza Antitrust Litig.*, No. 19-cv-5822, 2020 WL 4732333 (N.D. Cal. Aug. 15, 2020).

2.   *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-md-2836, 2020 WL 3446895 (E.D. Va. June 18, 2020), *report and recommendation adopted*, No. 18-md-2836, 2020 WL

4917625 (E.D. Va. Aug. 21, 2020).

3.  *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12 (E.D. Pa. 2019), *aff'd*, 967 F.3d 264 (3rd Cir. 2020).

4.  *In re Intuniv Antitrust Litig.*, No. 16-cv-12653, 2019 WL 4645502 (D. Mass. Sept. 24, 2019).

5.  *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668 (E.D. Pa. 2019).

6.  *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472, 2019 WL 3214257 (D.R.I. July 2, 2019).

7.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018).

8.  *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).

9.  *Am. Sales Co., LLC v. Pfizer, Inc.* ("*Celebrex*"), No. 14-cv-361, 2017 WL 3669604 (E.D. Va. July 28, 2017), *report and recommendation adopted*, 2017 WL 3669097 (E.D. Va. Aug. 24, 2017).

10. *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017).

11. *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47 (D. Mass. 2013).

12. *In re Prograf Antitrust Litig.*, No. 11-cv-10344, 2013 WL 2395083 (D. Mass. Apr. 23, 2013).

13. *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431, 2011 WL 3563385 (E.D. Pa. Aug. 11, 2011).

14. *In re Neurontin Antitrust Litig.*, No. 02-cv-1390, 2011 WL 286118 (D.N.J. Jan. 25, 2011).

15. *Am. Sales Co. Inc. v. SmithKline Beecham Corp.* ("*Flonase*"), 274 F.R.D. 127 (E.D. Pa. 2010).

16. *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-cv-55A25, 2008 WL 1946848 (E.D. Pa. May 2, 2008).

17. *Teva Pharm. USA, Inc. v. Abbott Labs.* ("*TriCor*"), 252 F.R.D. 213 (D. Del. 2008).

18. *In re K-Dur Antitrust Litig.*, No. 01-cv-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008), *aff'd*, 686 F.3d 197 (3d Cir. 2012), *vacated on other grounds sub nom. Upsher-Smith Labs., Inc. v. La. Wholesale Drug Co., Inc.*, 570 U.S. 913 (2013), *class certification holding reinstated, In re K-Dur Antitrust Litig.*, No. 10-cv-2077, 2013 WL 5180857 (3d Cir. Sept. 9, 2013).

19. *La. Wholesale Drug Co. v. Sanofi-Aventis*, No. 07-cv-7343, 2008 WL 11399716 (S.D.N.Y. Apr. 10, 2008).

20. *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365 (D.D.C. 2007).

21. *Meijer*, *Inc. v. Warner Chilcott Holdings Co. III*, *Ltd.* ("*Ovcon*"), 246 F.R.D. 293 (D.D.C. 2007).

22. *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003).

23. *In re Buspirone Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002).

24. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001).

25. *Meijer*, *Inc. v. Abbott Labs.* ("*Norvir*"), No. 07-cv-5985, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008).

26. *J.B.D.L. Corp. v. Wyeth-Ayerst Labs.*, *Inc.* ("*Premarin*"), 225 F.R.D. 208 (S.D. Ohio 2003).

**CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's CM/ECF system. Those attorneys who are registered CM/ECF users may access these filings, and notice of these filings will be sent to those parties by operation of the CM/ECF system.

Dated: September 15, 2020

/s/ Thomas M. Sobol
Thomas M. Sobol